732 P.2d 281

**Donna CROOKS, Petitioner,**

v.

**Honorable John H. MAYNARD, District Judge, Respondent.**

No. 15983.

Supreme Court of Idaho.

Jan. 30, 1987.

William J. Tway, Faber F. Tway, Anton Hohler of Tway & Tway, Boise, for petitioner, Crooks.

Brian K. Julian, Boise, for respondent, Judge Maynard.

Byron Johnson, Boise, for intervenor, Idaho District Judges' Association.

Roger Madsen, Boise, for intervenor, Association of Idaho Counties.

DONALDSON, Justice.

This case arises out of a dispute between an administrative district judge and a district court clerk. The district court clerk, Petitioner Crooks, initiated an original proceeding in the Supreme Court requesting an Alternative Writ of Prohibition be issued against Judge Maynard, the administrative district judge. The case was submitted to a Panel of Masters for the purpose of receiving evidence, making Findings of Fact and Conclusions of Law, and entering a recommendation to the Court. The Masters recommended that a Writ of Prohibition should not be issued. We agree and accordingly, *deny the application for the Writ of Prohibition.*

At all times relevant to these proceedings, Donna Crooks was the Clerk of the District Court, and ex officio Auditor and Recorder for the County of Nez Perce, Idaho, and John Maynard was the Administrative District Judge of the Second Judicial District of the State of Idaho. Nez Perce County is in the Second Judicial District. The controversy between the two parties is really an issue of whether the administrative district judge and/or the court clerk has supervisory powers over deputy district court clerks when they are performing judicial functions.

The facts, as found by the Masters, are straight forward. Clerk Crooks hired Brenda Holmes as a deputy clerk some time in April of 1985. Holmes' functions were to aid in the evaluation, coordination and organization of the duties of the deputy clerks of the district court. Subsequently, on April 23, 1985, Judge Maynard issued an administrative order which addressed the hiring of Brenda Holmes. Premised upon her hiring without the knowledge of the administrative district judge and without the opportunity for any judge to appraise her qualifications and integrity, the order stated that Holmes "shall perform no duties connected with the operation of the courts nor shall she interfere with the manner that the deputies perform their duties." The order went on to require Clerk Crooks to submit a plan to restore the working conditions of the deputy clerks to their former excellent status, or to cease further interference with the deputy clerks' performance of their duties.

On April 24, 1985, Judge Maynard found both Crooks and Holmes in violation of the April 23 order and had them jailed for contempt. They were released the following day by order of this Court upon their application for a Writ of Habeas Corpus. On the same day, Judge Maynard entered an order stating the circumstances which gave rise to the contempt of court determination.

On April 30, 1985, Clerk Crooks initiated the present proceeding which is a petition to the Supreme Court for an Alternative Writ of Prohibition, to restrain Judge Maynard from enforcing the April 23 order, or any like order, and from interfering with the operation of the office of the clerk of the district court for Nez Perce county.

On May 15, 1985, Judge Maynard issued another administrative order which, in effect, rescinded the administrative order of April 23, and the contempt order of April 25. However, the order further held that Holmes was not permitted to act as a depu-

ty clerk because she was not hired pursuant to the established practice.

On July 12, 1985, Clerk Crooks filed an Amended Petition for Alternative Writ of Prohibition. In this amended petition, Clerk Crooks sought resolution of two issues:

"(a) Should Judge Maynard be restrained for enforcing the administrative orders entered on April 23, 1985 and May 15, 1985, forbidding Brenda Holmes or any other person that may be hired without any consultation, notice or consent of a district judge to act as a deputy clerk of the district court"?

"(b) Should Judge Maynard be restrained from interfering with the operation of the office of the clerk of the district court and ex officio auditor and recorder of Nez Perce County, Idaho"?

A Writ of Prohibition is an extraordinary remedy. *Rust v. Stewart,* 7 Idaho 558, 64 P. 222 (1901). Its purpose is to "arrest" the proceeding of any tribunal, corporation, board or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person, and where there is no plain, speedy and adequate remedy otherwise available at law. I.C. §§ 7–401, –402.

In her Amended Petition for Alternative Writ of Prohibition, Clerk Crooks requested that Judge Maynard be restrained from enforcing his orders of April 23 and May 15, 1985, forbidding Brenda Holmes or any other person from acting as a deputy clerk without prior approval of the district court. Clerk Crooks also requested a general injunction, prohibiting Judge Maynard from interfering with the operations of the office of the clerk of the district court in Nez Perce County.

■ Before we address the ultimate controversy surrounding this case, we need to point out that part of the relief requested by Crooks has become moot. The order entered by Judge Maynard on April 23, 1985, was rescinded by the order entered on May 15, 1985. For this reason, a prohibitory writ should not be issued restraining Judge Maynard in respect to the enforcement of the April 23 order.

■ Also, Clerk Crooks requested in her Amended Petition for an Alternative Writ of Prohibition that Judge Maynard be restrained from interfering with the operation of the office of ex officio auditor and recorder of Nez Perce County. However, after examining the evidence presented to the Masters, we conclude the Judge Maynard in no way interfered with Clerk Crooks' functions or duties as ex officio auditor or recorder for the county. The record is totally lacking with respect to such evidence, and therefore, there is no basis for issuing a prohibitory writ in respect to Clerk Crooks' functions as auditor and recorder.

We now turn to the real heart of this case. Clerk Crooks requested that Judge Maynard be prohibited from interfering with her duties as court clerk. This requires a determination of the respective powers and duties of the administrative district judge and the clerk of the district court of a judicial district. More specifically, we are concerned with the relative roles of the administrative district judge and the clerk of the district court in respect to the hiring, supervision and firing of the deputy court clerks.

The beginning point in our analysis is the Idaho Constitution and the relative powers the document gives to clerks of the district court and to judges. Prior to statehood, clerks of the district court were appointed by judges and served as a clerk for a particular district, subject to judicial control. The Organic Act of the Territory of Idaho, 12 Stat. 808, 811 ch. 17, § 9 (1863). However, the Idaho Constitution changed the selection process of the clerk. Art. 5, § 16 of the constitution provides: "A clerk of the district court for each county shall be elected by the qualified voters thereof at the time and in the manner prescribed by law for the election of members of the legislature, and shall hold his office for the term of four (4) years." This constitutional provision changed the status of the clerk from that of an appointed official to that of

an elected official. The question that arises is whether this provision allows the clerk of the district court, as an elected official, the right to exercise unbridled discretion over the administration of his or her office.

The answer is obviously no. The office of the clerk of the district court is created in art. 5, § 16. Art. 5 of the constitution is the article creating the judicial branch. Therefore, we conclude that the office of the district court clerk is in fact part of the judicial branch. Our conclusion is buttressed by the holding in *State v. Wharfield,* 41 Idaho 14, 236 P. 862 (1925). There, the Court held that a county prosecuting attorney was a judicial officer and not an executive officer—because the office is created in art. 5 of the constitution.

In another section of the constitution, art. 18, § 6 (addressing county organization and offices) provides that the clerk of the district court shall also serve as the county's ex officio auditor and recorder. That section further provides that the "auditor and recorder and clerk of the district court shall be empowered by the county commissioners to appoint such deputies and clerical assistance as the business of their office may require, said deputies and clerical assistants to receive such compensation as may be fixed by the county commissioners." The question before us now is what effect does art. 18, § 6 have on the status of clerk of the district court as a judicial officer created by art. 5, § 16?

An opinion of this Court issued shortly after statehood addressed both art. 5, § 16, and art. 18, § 6. In *Hilliard v. Shoshone County,* 3 Idaho 103, 27 P. 678 (1891), the Court was faced with deciding the amount of compensation that should be paid to the person holding the offices of clerk of the district court and auditor and recorder. The Court there stated:

"Thus far the constitution has provided for a clerk of the district for each county, and has made this officer ex-officio auditor and recorder. He is still one person and one officer, although he holds two or three distinct and separate offices, if we

please to call them so, and performs the duties of all. We must not confound the office with the officer or person who holds the office. The compensation is not paid to the office of the district clerk, nor to the office or offices of auditor and recorder, but to the one person or officer who holds all these offices, and performs the duties thereof. The constitution having created this officer, and directed what positions he shall hold and the duties he shall perform, then proceeds to provide for his compensation." 3 Idaho at 106.

This holding, just a few years after statehood, indicates that the leading authorities of the time considered the office of the court clerk to be separate and distinct from that of county auditor and recorder. The framers of the constitution, in enacting art. 18, § 6, did not intend to alter the status of the clerk as a judicial officer as provided for in art. 5, § 16. Instead, their intent was to provide for one person to hold two offices—that of county auditor and recorder with that of clerk of the district court.

■ Since the office of the clerk of the district court is created in art. 5, not art. 18, the office is within the domain of and subject to the power of the judicial branch. Accordingly, the legislature does not have the authority to deprive the judicial branch of its power and control over the office (*see* art. 5, § 13 and *R.E.W. Construction Co. v. District Court of Third Judicial District,* 88 Idaho 426, 400 P.2d 390 (1965)).

The power of the judicial branch became unified in 1962 when art. 5, § 2 was amended. This section now provides:

"§ 2. **Judicial power—Where vested.**—The judicial power of the state shall be vested in a court for the trial of impeachments, a Supreme Court, district courts, and such other courts inferior to the Supreme Court as established by the legislature. The courts shall constitute a *unified and integrated judicial system for administration and supervision by the Supreme Court.* The jurisdiction of such inferior courts shall be as prescribed by the legislature. Until provid-

ed by law, no changes shall be made in the jurisdiction or in the manner of the selection of judges of existing inferior courts. (Emphasis added.)"

In effect, with this amendment Idaho has followed the lead of New Jersey [1] and other states in adopting a "unitary" system of judicial management. The purpose of a "unitary" system of judicial management is to centralize the administrative power of the entire judicial system in the Supreme Court and make the chief justice the administrative head of all courts. *Rutledge v. Workman*, 332 S.E.2d 831 (W.Va.1985). In turn, to further the interests of a unified and integrated judicial system, the Supreme Court through the chief justice has delegated some management authority to the administrative director of the courts to oversee the whole court system, and to the administrative judge [2] of each district to oversee the management of the court system in his district. In addition, the district judges and magistrates have been given day-to-day management authority over their courts. When administrative disputes arise between judges within a judicial district, the Supreme Court has delegated decision-making power to the administrative district judge to settle those disputes. Basically, the Supreme Court, acting through the chief justice is the supervisor for all judicial personnel. The clerk of the district court, a position created in art. 5, falls within this supervisory control of the Supreme Court and any supervisory control passed down to the administrative director, administrative judge and district judge.

I.R.C.P. 77(c) and 79(f) are examples of rules exercising the power to supervise and direct the clerks of the district court. I.R.C.P. 77(c) states:

"**Rule 77(c). Clerk's office and orders by clerk.**—The office of the clerk of the district court with the clerk or a deputy in attendance shall be open for the transaction of business on such days and during such hours as the administrative district judge of the judicial district in which the county is located may prescribe. All motions and applications in the clerk's office for issuing process, for entering defaults or judgments by default, and for other proceedings which do not require allowance or order of the court are grantable of course by the clerk; but his action may be suspended or altered or rescinded by the court upon cause shown."

I.R.C.P. 79(f) states:

"**Rule 79(f). Other books and records of the clerk.**—The clerks of the district courts and all judges shall also keep such other books and records as are required by the statutes of the state, or as may be requested by the director of the administrative office of the courts of the state of Idaho."

*See also,* Rule 31, Idaho Court Administrative Rules.

Additionally, the legislature has statutorily recognized that the clerk of the district court is a judicial officer. The general duties of the clerk of the district court are enumerated in Title 1, ch. 10, Idaho Code. Most statutory enactments relating to courts and court officials are contained in Title 1. As such, placement of the statutes relating to the clerk of the district court in Title 1 is consistent with the mandates of art. 5.

I.C. § 1–1001 specifically recognizes the role of the clerk of the district court. This section states:

"**1–1001. Duties of clerk.**—The clerk of the district court must perform such duties as are prescribed in the Code of Civil Procedure and in the Penal Code, and such duties as may be required of him by the rules and practice of the court."

The Code of Civil Procedure and the Penal Code have been superseded by the Idaho

---

1. New Jersey, in 1947, became the first state judiciary to adopt the unitary management structure. Presently, 41 of 50 states, and the District of Columbia, have unitary court systems.

2. The administrative district judge is elected by a majority of the other district judges within the district. (I.C. § 1–703).

Court Rules as adopted by the Supreme Court pursuant to its inherent rule-making power. *See generally, R.E.W. Const. Co. v. District Court of Third Judicial District, supra.*

Further, I.C. § 1–907, addressing the power of the administrative district judge, provides in part:

"The administrative judge or acting administrative judge in each judicial district, subject to the rules of the supreme court, shall have administrative supervision and authority over the operation of the district courts and magistrates in the district. These powers and duties include, but are not limited to, the following:

" . . .

"(c) Supervising the clerks of the district courts and the discharge of the clerical functions of the district courts; . . . ."

*See also,* I.C. §§ 1–601 (clerks of the district courts are officers of courts); and 1–614 (record keeping duties confirmed of judges, clerks, and other officers). In essence, the legislature with these enactments has acknowledged that the clerk of the district court is subject to the control and direction of the judiciary. The constitution itself and the above legislative statutes make it abundantly clear—the clerk of the district court is a judicial officer, subject to the administrative power of the Supreme Court.

■ However, the power and control of the judicial branch over the office of the clerk of the district court is not absolute. Art. 5, § 16 provides for the election of the clerk of the district court by the qualified voters in each county. Thus, the judiciary's power over a clerk is subservient to the right of the people to choose the person they believe most qualified to hold the office.

A further and very practical limitation arises when the full impact of art. 18, § 6 is considered. Even though a clerk of the district court is a judicial official, the person holding that office is also a county official when carrying out the duties of county auditor and recorder. When the officer changes hats from county auditor and recorder to the clerk of the district court, the supervisory control is in the judiciary.

However, it is necessary to make clear that this limitation applies to the person and not to the office. Art. 2, § 1 of the constitution provides:

"**§ 1. Departments of government.**— The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted."

The section delineates the doctrine of separation of powers as it relates to the coordinate branches of government—where a power is given to one department, another department cannot act. *State ex. rel. Hansen v. Parsons,* 57 Idaho 775, 69 P.2d 788 (1937). The legislature cannot exercise any supervisory power over the clerk of the district court when exercising judicial functions, because the clerk is an arm of the judicial branch. The officer, when wearing a judicial hat, can only be supervised by an appropriate judicial official.

■ Further, art. 18, § 6 provides that the clerk of the district court cannot appoint deputies and assistants unless authorized to do so by the county commissioners. At first blush, this provision appears to give the county commissioners more control than they actually have. The county commissioners' power, at least with respect to the clerk of the district court, is limited and cannot be exercised to override every hiring decision. Upon a showing to the proper tribunal that a deputy or clerical assistant is needed, the county commissioners must authorize the appointment. *Dukes v. Board of County Commissioners,* 17 Idaho 736, 107 P. 491 (1910) (commissioners were ordered to authorize an appointment upon a district court's finding

that the business of the office of clerk of the district court needed a deputy).

We are mindful of *Campbell v. Board of Commissioners of Canyon County,* 5 Idaho 53, 46 P. 1022 (1896), which held that county commissioners had discretion to authorize appointment of a deputy to the sheriff's department. This case is easily distinguishable because the sheriff's office is a county office, unlike the office of clerk of the district court which is a judicial office created in art. 5.

█ The judiciary's role in hiring is also limited. The district judge's authority to supervise the clerk of the district court in the discharge of clerical duties does not include the authority or power to dictate to the clerk who shall be hired as an assistant or as a deputy. A deputy serves as the alter ego of the clerk, performing functions and duties in the place of the clerk. For example, I.C. § 1–1002 provides that, "[t]he clerk must in person or by deputy attend every term of the district court held in his county. All acts done and process issued by the deputy must be in the name of his principal." Because the clerk is elected by voters and is not selected or appointed by the judiciary, we conclude that the judiciary does not have the authority to choose "alter ego" deputies to perform functions and duties of the clerk. Furthermore, the constitution, in art. 18, § 6 and the related statute, I.C. § 31–3107, specifically give the clerk of the district court the power to hire deputy clerks.

A contrary result would create a myrid of problems. The clerk of the district court also serves as county auditor and recorder and must have assistants to aid in the performance of these functions. In several of our smaller counties, the offices of clerk, auditor and recorder may need only one or two deputies to assist in carrying out the duties of all of these offices, both judicial and county. As such, any single deputy must be able to perform both judicial and county functions. If a district judge is able to dictate who the district court clerk hires, he ultimately is able to usurp the power of county auditor and recorder. This result is contrary to art. 2, § 1.

█ However, the right of the district court clerk to exercise discretion in hiring deputies must be balanced against the constitutional mandate of a unified and integrated judicial system. To further the orderly administration of the courts, judges must be able to set—and require the clerks to follow—hiring guidelines for deputy clerks performing judicial functions. For example, the judge can require the clerk to hire only people who have certain minimum educational or experience qualifications. Of course, the best policy is for the clerks and judges to work closely together and cooperate in the hiring process to ensure efficiency and effectiveness in the operation of the district courts and county auditor and recorder offices.

Although we have concluded that the hiring and firing of deputy clerks is within the province of the clerk of the district court, and that the administrative district judge and/or district judge is not empowered to decide who shall be hired or appointed to serve as deputy clerks, we recognize that the function of the court may be jeopardized should a clerk hire or appoint an incompetent, unqualified, irresponsible or untrusty person as a deputy to perform court-related duties. By statute, the clerk is liable on his official bond to any person injured by a deputy's wrongful act or omission to perform any duty imposed by law. I.C. § 1–1003. But the smooth, efficient and proper operation of the court system itself may be nonetheless severely impaired or adversely affected depending upon the conduct of the court-related personnel. Therefore, the district judge, in the exercise of his supervisory power over the clerical activities of the clerk of the district court, controls the assignment of persons hired by the clerk. If the clerk makes an assignment of personnel to a judicial function which the judge finds unacceptable, he can refuse to accept that assignment. Consequently, the district judge has the power to require a reassign-

ment of personnel to assist in judicial-related functions.

■ However, the clerk of the district court is not without remedy, if he or she is unable to comply with, or disagrees with, the directives of the district judge as an officer created by art. 5, the clerk of the district court can request the administrative judge of the district and ultimately the Supreme Court, through the administrative director of the courts, to review the judge's decision. However, the clerk will have to state with articulated reasons why the directives cannot, or should not, be followed. We do note that the clerk of the court is responsible for the performance of the clerical duties, and pending the request, must perform the expected duties.

■ In this case, we conclude that Judge Maynard did exercise his prerogative, using his administrative authority in refusing to accept the assignment of Brenda Holmes to perform the coordination and efficiency analysis desired by Clerk Crooks.[3] In his administrative order, he stated that, without the opportunity to appraise Holmes' qualifications or integrity, she would be unacceptable to him in the performance of a deputy clerk's duties. Such was within his supervisory authority provided by I.C. § 1–907(c). Upon that basis, we conclude that Judge Maynard's action in entering the administrative orders on April 23 and May 15, 1985 were within his power and authority and, therefore, were not subject to restraint through a writ of prohibition.

Writ of prohibition is denied.

SHEPARD, C.J., and BAKES and HUNTLEY, JJ., concur.

BISTLINE, Justice, dissenting.

As discussed below, two important points need to be considered and accepted.

## I.

The controversy is *wholly* moot insofar as proceedings in the state of Idaho judicial system are concerned. The confrontation of elected Judge Maynard with elected district court clerk Crooks should never have happened in the first instance and would for certain appear to have been more of a clash of personalities than a question of dominant authority. Unfortunately, one of the two held an office which carried with it the power to jail for contempt. While the clash was raging, an astute writer for the *Lewiston Tribune* opined that in the public interest both persons should have resigned from office. Neither did. The electorate of the Second Judicial District attended to the problem in the November 1986 general election at which the people showed a resounding disenchantment, if not disapproval, of such shenanigans. The Second Judicial District comprises counties other than Nez Perce County, and there are and have been forever since statehood elected constitutional court clerks in those other counties, as in all of the state's 44 counties.

A more civil remedy which Judge Maynard could have sought, if he truly believed the situation intolerable and that the right was with him, would have been to seek an opinion from the Attorney General. It was unbelievable that he would order the sheriff to jail a constitutional officer in almost any conceivable circumstance, but for certain it should not have taken place as a "judicial" resolution to the petty dispute between the judge and the clerk. Both could have gone to the Attorney General, and if finding no satisfactory answer there, an appropriate extraordinary proceeding in this Court should have been filed. In all likelihood, the parties could have been brought to an amicable solution short of requiring a decision. Jailing the county clerk was patently improper and a manifest disrespect for the office—if not the person—of clerk of the court.

As it turned out, this Court's jurisdiction was invoked—not by the judge seeking a clarification of his power *vis-a-vis* those of another elected constitutional court officer,

---

**3.** We specifically refuse to address the propriety of Judge Maynard's use of the contempt power, since it is moot.

but by the clerk and her deputy asking that both be freed from unlawful jail incarceration.

Even after this Court issued a writ directing their release, and even after the judge some three weeks later rescinded the contempt order which had jailed the clerk and her deputy, the judge followed up with yet another order which was based wholly on his own perceptions as to what is or is not "established practice." So pushed, the clerk sought to protect her beliefs in what she considered to be a clerk's function. This was done under the processes of another extraordinary writ [prohibition] which this court is authorized to issue in proper circumstances as a means of testing, *inter alia*, the legality of certain proceedings. As clerk, she was within her rights to seek such a writ. Similarly, Judge Maynard, as judge, could have applied to this Court for another extraordinary writ, that of mandate, to seek an order of this Court directing compliance with the views entertained by his office.

This Court received the report of the masters on May 13, 1986, and heard oral argument on November 3, 1986. Before this Court had digested the issues and arguments, both of the litigants had lost their bids for re-election, and their problem was resolved. In my view, all proceedings in this Court should have been dismissed.

In almost one hundred years there had not been another such controversy between two such persons holding two such elected offices, and personally as a boy, a young man, and an admitted attorney—fifty years of active memory—I have known of nothing but mutual cooperation and good will existing between district judges and court clerks.

Accordingly, where I differ from the majority is that I see no reason whatever to "now turn to the real heart of this case." There have been many cases in Idaho's judicial history where, for instance, a county commission comprised of three elected officials brings or is brought into litigation, and while it is pending there is a change in personnel, it is proper to substitute in the new commissioners. Similarly, with city councils, state highway commissioners, *ad infinitum*. But, although sued officials may not have a right to avoid being brought in, suing officials are free to drop the litigation.

Donna Crooks, the individual, had a right to seek her release from confinement, but she no longer has any right to pursue any action at this time in the name of the county clerk, nor does she any longer have a right to sue John H. Maynard as a district judge, which he no longer is.

The only perceivable reason for not dismissing this proceeding would have to be a desire on the part of this Court to use the occasion to go ahead and write what it has now written on a "determination of the respective powers and duties of the administrative district judge and the clerk[s] of the district court[s] of a judicial district. More specifically ... the relative roles of the administrative district judge and the clerk[s] of the district court[s] in respect to the hiring, supervision, and firing of the *court clerks*." Majority opinion, p. 5. (In clarification of the opinion for the Court, I suggest that *court clerks* means deputy clerks who function as aids of the court.)

I agree with the statement that "[o]f course, the best policy is for the clerks and judges to work closely together and cooperate in the hiring process to ensure efficiency and effectiveness in the operation of the district courts and county auditor and recorder offices." It would be preferable for the Court to say that much and no more. It is much to be doubted that the state's district court clerks are going to be pleased with a decision that places them, elected constitutional officers, under the direction and control of the Administrative Director of the Courts, a statutory creation.

II.

Since statehood, the legislature has prescribed the duties of an elected clerk of the district court. The majority opinion notes I.C. § 1–1001, and sets it out:

**1–1001. Duties of clerk.**—The clerk of the district court must perform such duties as are prescribed in the Code of Civil Procedure and in the Penal Code, and such duties as may be required of him by the rules and practice of the court.

The majority then declares that both the Code of Civil Procedure and the Penal Code have been superseded by rules of the Supreme Court promulgated "pursuant to its inherent rule-making power," and cites *R.E.W. Construction Co. v. District Court of Third Judicial District,* 88 Idaho 426, 400 P.2d 390 (1965). That same case is earlier cited for the proposition that "the legislature does not have the authority to deprive the judicial branch of its power and control over the office [of the clerk]."

Just to keep the record straight, it should be kept in mind that it was the legislature in the first place which, in 1941, made the determination to recognize the inherent power of the Supreme Court "to make rules governing procedure" in the Idaho judicial system. I.C. § 1–212. Section 1–213, a part of the same 1941 enactment, in fact said the Supreme Court shall by general rules prescribe the forms of process, writs, pleadings and motions, the manner of service, time for appearance, and the practice and procedure in all actions and proceedings. But, a caveat is attached at the end of § 1–213: "Said rules shall neither abridge, enlarge nor modify the substantive rights of any litigant." It may not be incorrect to presume that the primary reason for the Court's issuance of an opinion today is to preclude the association of district court clerks from asking the legislature to intervene on their behalf—assuming, of course, that the clerks do not readily accept the Court's decision.