Donna CROOKS and Brenda Holmes,
Petitioners-Appellants,

v.

Honorable John H. MAYNARD,
Respondent-Appellee.

No. 86-3629.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 1987.

Decided June 24, 1987.

F.Supp. 17 (D.Idaho 1985).

Before SNEED and HALL, Circuit Judges, and STEPHENS,* District Judge.

SNEED, Circuit Judge:

The plaintiffs, Donna Crooks and Brenda Holmes, brought 42 U.S.C. § 1983 actions against Idaho District Judge John H. Maynard. The plaintiffs claimed that Judge Maynard violated their constitutional rights to procedural due process by jailing them pursuant to a contempt order. The district court, upon the filing of a stipulation of undisputed facts, found that Judge Maynard was immune from liability and granted summary judgment in his favor. We affirm.

## I.

### FACTS AND PROCEEDINGS BELOW

At all times relevant to this case, John Maynard was a duly elected district judge for the Second Judicial District of the State of Idaho. Judge Maynard also served as Administrative District Judge (a not unusual but troublesome title nonetheless) of that district. Donna Crooks was the duly appointed clerk of the district court for Nez Perce County. Apparently the troubles began in April 1985 when Crooks hired Brenda Holmes to assist her in the coordination, organization and evaluation of the deputy clerks. Holmes was hired without the knowledge of Judge Maynard and without the opportunity for any judge to appraise her qualifications and integrity. On April 23, 1985, Judge Maynard, after learning of Holmes' hiring, issued an administrative order providing that Holmes "shall perform no duties connected with the operations of the courts nor shall she interfere with the manner that the deputy clerks perform their duties." Excerpt of Record at 11. The order further required that Crooks "submit a plan whereby the working conditions be restored to their former excellent status or in the alternative, withdraw from

William J. Tway, Anton Hohler, Boise, Idaho, for petitioners-appellants.

Brian K. Julian, Kathryn A. Sticklen, Boise, Idaho, for respondent-appellee.

* Honorable Albert Lee Stephens, Jr., Senior United States District Judge, Central District of California, sitting by designation.

further interference with the deputy clerks [sic] pursuit of their lawful duties." *Id.*

On April 25, 1985, Crooks and Holmes went to the second floor of the Nez Perce County Courthouse. While they were in the hallway adjacent to the clerk's office, Judge Maynard ordered them to leave the second floor area because they were in violation of his April 23 order. He warned them that they would be held in contempt if they did not leave. When they refused to leave the area, Judge Maynard ordered the plaintiffs jailed for contempt. They were released the following day by order of the Idaho Supreme Court upon their application for a writ of habeas corpus.

On April 30, 1985, Crooks petitioned the Idaho Supreme Court for a writ of prohibition to restrain Judge Maynard from enforcing the April 23 order, or any like order, and from interfering with the operation of the office of the clerk of the district court for Nez Perce county. On May 15, 1985, Judge Maynard issued another administrative order that rescinded the administrative order of April 23 and the contempt order of April 25. However, the order went on to state that Holmes was not permitted to act as deputy clerk because she was not hired pursuant to the established practice. On July 12, 1985, Crooks filed an amended petition for writ of prohibition requesting that Judge Maynard be restrained from enforcing his orders of April 23 and May 15 and requesting a general injunction prohibiting Judge Maynard from interfering with the operations of the office of the clerk of the district court. The Idaho Supreme Court recently denied the petition for writ of prohibition. *Crooks v. Maynard*, 112 Idaho 312, 732 P.2d 281 (1987). The court concluded that the administrative orders of April 23 and May 15 were within Judge Maynard's power and authority under Idaho law. *Id.* at 319, 732 P.2d at 288.

Meanwhile, in June 1985, the plaintiffs filed the § 1983 actions in federal district court, the appeals of which are now before

us.[1] In her complaint Crooks alleged that 1) her constitutional office was usurped, 2) she was imprisoned without due process of law, 3) she was denied rights of association and free speech, 4) she was arrested without probable cause, and 5) her right to be informed of the true nature and cause of the accusation against her was violated. Holmes made all of the same claims except the first.

The United States District Court for the District of Idaho found that Judge Maynard was protected by absolute judicial immunity and granted summary judgment in his favor. Crooks and Holmes timely filed this appeal.

## II.

### STANDARD OF REVIEW

■ We review a grant of summary judgment de novo. *Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir.1986). Moreover, the issue of whether a judge is protected by judicial immunity is a question of law reviewable de novo. *See Brewer v. Blackwell*, 692 F.2d 387, 390 (5th Cir.1982).

## III.

### DISCUSSION

Not surprisingly, judicial immunity is a subject in which judges are keenly interested. Perhaps cases involving judicial immunity should not be decided by judges. At present, however, there is no escape for judges from this duty. Mass recusals would solve nothing. Therefore, we must determine the validity of Judge Maynard's claim of judicial immunity. We take our cue from the Supreme Court's most recent pronouncement on the subject, *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), and our own recent en banc decision in *Ashelman v. Pope*, 793 F.2d 1072 (9th Cir.1986) (en banc). The long-established common law rule is that judges are immune from damage liability for acts performed in their official capaci-

---

1. The actions were filed separately but were consolidated upon Judge Maynard's motion on

August 21, 1986.

ties. *See Ashelman,* 793 F.2d at 1075. The immunity is absolute; it applies even where a judge acts maliciously. *Stump,* 435 U.S. at 356, 98 S.Ct. at 1104. In enacting 42 U.S.C. § 1983, Congress did not abrogate the doctrine of absolute judicial immunity. *Id.*

■ In *Stump,* the Supreme Court established a test of two somewhat overlapping parts for determining whether a judge enjoys absolute immunity from money damages in a suit under § 1983. The initial inquiry is whether the judge dealt with the plaintiff in his judicial capacity, i.e., whether his acts were judicial acts. *Id.* at 362, 98 S.Ct. at 1107. If not, the judge is not absolutely immune. The second part of the test, assuming the judge was acting in his judicial capacity, is whether he was acting in "clear absence of all jurisdiction." *Id.* at 357, 98 S.Ct. at 1105. In such case there also is no absolute immunity. The partial overlap occurs because an action "in clear absence of all jurisdiction" very frequently cannot be classified as judicial.

Because the Idaho Supreme Court has already concluded that Judge Maynard acted within his power and authority in entering the April 23 administrative order,[2] *Crooks,* 732 P.2d at 288, the sole issue before us is whether Judge Maynard is immune from liability for holding Crooks and Holmes in contempt for violation of that lawful order.[3] The district court found that the contempt order was a judicial act not done in the clear absence of jurisdiction. It thus ruled that Judge Maynard was immune from suit. We agree.

### A. *Judicial Capacity*

In determining whether a particular act is a "judicial" one, we are instructed to consider two factors: (1) "whether it is a function normally performed by a judge," and (2) "whether [the parties] dealt with the judge in his judicial capacity." *Stump,*

435 U.S. at 362, 98 S.Ct. at 1107. The first factor presents no problem. The issuance of a contempt order is undoubtedly a function normally performed by a judge. *See King v. Love,* 766 F.2d 962, 966 (6th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 351, 88 L.Ed.2d 320 (1985).

The more difficult question is whether Crooks and Holmes dealt with the judge in his judicial, as opposed to some other, capacity. Some have suggested that there is a fairly clear line between acts done in a judge's judicial capacity and acts done in his executive or administrative capacity. *See Forrester v. White,* 792 F.2d 647, 663 (7th Cir.1986) (Posner, J., dissenting), *cert. granted,* — U.S. ——, 107 S.Ct. 1282, 94 L.Ed.2d 140 (1987). Those falling on the administrative line are undeserving of absolute immunity, it is argued. The problem with this distinction is not that it cannot be drawn but that it ignores the reality of present day judging. Virtually all judges, state and federal, are required to perform duties not involving sitting on the bench or preparing orders, legal memoranda, and opinions. The presence of staff personnel and the frequently large numbers of judges that serve on a single trial or appellate court generate duties and activities that can be described as administrative or executive in character but which are essential to the functioning of the court. While many of these are discharged by the chief or presiding judge, many are also borne by rank and file judges. Obviously there are activities that under no circumstances can be deemed to be judicial, e.g., arranging the court's spring party. However, direction of a court's staff in a manner designed to improve overall judicial performance frequently is as important as remaining on the bench longer hours, in-chambers conferencing with attorneys, or producing more and better opinions. If the purpose of absolute immunity is, as Judge Posner suggests in his dissent in *Forrester,* to

---

2. The only claim made by Crooks in connection with the administrative order itself was that the issuance of the order usurped her state constitutional office. This claim fails because of the Idaho Supreme Court's holding that the order was proper.

3. The Idaho Supreme Court specifically declined to address the propriety of Judge Maynard's use of the contempt power, because the issue was moot in the case before it. *Crooks,* 112 Idaho at 319 n. 3, 732 P.2d at 288 n. 3.

protect judges "from being seriously deflected from the effective performance of their duties," *id.* at 660, it must be recognized that today's judge administers as he judges and that the sharp line that can be drawn between a judicial act, such as ruling on the admission of evidence, and managing court or chambers personnel, is useless in fixing the limits of judicial immunity.

 In any event, Judge Maynard acted in a judicial capacity when he entered and sought to enforce an order that, while directed at what might be perceived to be an administrative problem, was within his power to enter. His act was a judicial act even though many judges would not have exercised their judicial powers as did he.[4]

### B. *Clear Absence of All Jurisdiction*

The Supreme Court in *Stump* employed a broad definition of the term "jurisdiction" in applying the second part of its two part test. *See* 435 U.S. at 356–57, 98 S.Ct. at 1104–05; *accord Ashelman,* 793 F.2d at 1076 ("Jurisdiction should be broadly construed to effectuate the policies supporting immunity."). The Court employed the distinction drawn in *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872), between acts "in excess of jurisdiction" (criminal court judge convicts plaintiff for a nonexistent crime) and acts "in clear absence of jurisdiction" (probate judge tries a criminal case). *Id.* at 351–52. Judicial immunity is pierced only in the latter class of cases. A judge, the Court repeated, is not acting in the "clear absence of jurisdiction" when "the action he took was in error, was done maliciously, or was in excess of his authority." *Stump,* 435 U.S. at 356, 98

S.Ct. at 1104. He retains his immunity "even if his exercise of authority is flawed by the commission of grave procedural errors." *Id.* at 359, 98 S.Ct. at 1106.

Crooks and Holmes contend that Judge Maynard acted in clear absence of all jurisdiction when he held them in contempt for failing to obey his lawful administrative order. They argue that a judge, acting in his role as an administrative judge,[5] has no power to enforce his administrative orders with a judicial contempt order. Enough has already been said to indicate our reservations about such an approach. However, to resolve the "clear absence of all jurisdiction" issue, we turn first to statutory grants of authority.

Idaho Code § 1–1603 provides that "[e]very court has power: ... [t]o compel obedience to its ... orders." Section 7–603 of the Idaho Code states that "[w]hen a contempt is committed in the immediate view and presence of the court ... it may be punished summarily." Section 7–601 defines as contempts of the authority of the court: (3) "Misbehavior in office or other wilful neglect or violation of duty by ... [a] clerk ... or other person appointed or elected to perform a judicial or ministerial service" and (5) "Disobedience of any lawful judgment, order or process of the court."

The district court held that Idaho Code § 7–601(3) provided sufficient authority for Judge Maynard's actions. The court characterized the plaintiffs' failure to comply with the administrative order as falling within the broad category of "misbehavior in office" (Crooks as the clerk and Holmes as another person appointed to perform

---

4. The plaintiffs argue that Judge Maynard "acted out of personal motivation and used his judicial office as an offensive weapon to vindicate personal objectives." Appellant's Brief at 20. The plaintiffs' focus on the judge's intentions is misplaced. Evil intent or motive does not transform a judicial act into a nonjudicial one. *O'Neil v. City of Lake Oswego,* 642 F.2d 367, 370 (9th Cir.1981). In *Harper v. Merckle,* 638 F.2d 848 (5th Cir.), *cert. denied,* 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981), the Fifth Circuit relied on the improper motives of the judge to find that the judge's actions were nonjudicial. *Id.* at 859. However, the Fifth Circuit

in a later case noted that *Harper,* "by its own terms, is virtually without precedential value," and criticized *Harper's* reliance on intent. *Adams v. McIlhany,* 764 F.2d 294, 298 n. 4 (5th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986).

5. Idaho Code § 1–907, delineating powers and duties of an administrative judge, does not mention a contempt power. However, that section explicitly provides that the powers of an administrative judge are not limited to those described therein.

ministerial service) subject to summary contempt.

 We are reluctant to find that Judge Maynard's contempt order was squarely authorized by § 7–601(3) because we do not believe Holmes falls within the category of "appointed or elected" persons. However, Title 7, chapter 6 of the Idaho Code does not circumscribe the judicial contempt power; it merely provides statutory guidance. *Marks v. Vehlow*, 105 Idaho 560, 566, 671 P.2d 473, 479 (1983). Idaho judges have an inherent common law contempt power, and Idaho Code § 1–1603 recognizes this broad power. *Id.* In Idaho Code §§ 7–601(3) and (5) the legislature has demonstrated its concern for giving courts power to enforce their lawful orders and to control behavior by court personnel who play an integral role in the judicial process. The statutory framework strongly suggests that Judge Maynard did not act in clear absence of all jurisdiction.

The Idaho Supreme Court has "recognize[d] that the function of the court may be jeopardized should a clerk hire or appoint an incompetent, unqualified, irresponsible or untrusty person as a deputy to perform court-related duties." *Crooks*, 112 Idaho at 318, 732 P.2d at 287. An administrative judge must have the power to enforce his decisions with respect to court-related personnel to prevent severe impairment of "the smooth, efficient and proper operation of the court system itself." *Id.* Thus the administrative and judicial roles of the administrative district judge in Idaho are inextricably intertwined. A judge using his judicial contempt power as a means of enforcing an administrative order aimed at ensuring effectiveness in the operation of the district court, while perhaps not acting wisely, is not acting in the clear absence of all jurisdiction.

We recognize that some courts have held that a judge is not immune from liability in connection with the hiring and firing of court personnel. *See McMillan v. Svetanoff*, 793 F.2d 149 (7th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 574, 93 L.Ed.2d 577 (1986); *Laskowski v. Mears*, 600 F.Supp. 1568 (N.D.Ind.1985). Courts have stated that the "[h]iring and firing of employees

is typically an administrative task," *McMillan*, 793 F.2d at 155, and that these "personnel decisions are separate from the jurisdiction, power and authority of the court," *Laskowski*, 600 F.Supp. at 1573. Our reservations with respect to the approach of these cases have already been stated. In any event, the issuance of a contempt order is an inherent judicial function, and is expressly authorized by the Idaho legislature as a means of addressing violations of court orders and misbehavior by court personnel. In violating the lawful administrative order the plaintiffs here were dealing with Judge Maynard in his judicial capacity, and he was not acting "in clear absence of all jurisdiction."

AFFIRMED.