**Donna CROOKS, Plaintiff,**

v.

**Honorable John H. MAYNARD, Defendant.**

**Brenda HOLMES, Plaintiff,**

v.

**Honorable John H. MAYNARD, Defendant.**

**Civ. Nos. 85–3074, 85–3079.**

United States District Court, D. Idaho.

Aug. 4, 1989.

---

William J. Tway, Anton J. Hohler, Tway & Rosenheim, Boise, Idaho, for plaintiffs.

Brian K. Julian, Quane Smith Howard & Hull, Boise, Idaho, for defendant.

## MEMORANDUM OPINION AND ORDER

RYAN, Chief Judge.

### I. FACTS & PROCEDURE

Defendant was, at all times relevant to this suit, a District Judge of the Second Judicial District of the State of Idaho,

where he also served as Administrative District Judge. Plaintiff Donna Crooks was the clerk of the district court, and the ex officio auditor and recorder for Nez Perce County, Idaho.

In early 1985, Crooks appointed Plaintiff Brenda Holmes as a deputy clerk. Defendant did not have any opportunity to pass on Holmes' qualifications and fitness for the position prior to her appointment.

On April 23, 1985, defendant issued an administrative order preventing Holmes from performing any duties connected with the operation of the courts and from interfering with the deputy clerks' performance of their duties.[1] Crooks received a copy of that order the day it was issued.

On April 25, 1985, plaintiffs went to the second floor of the Nez Perce County Courthouse, where the clerks' office and judicial chambers are located. Plaintiffs state that their reason for being there was to find a suitable location for installing a computer. Plaintiffs were confronted by a magistrate judge, who warned them that they might be in violation of defendant's administrative order.

Hearing the disturbance in the hall, defendant came out of his chambers, and ordered plaintiffs off the second floor. Plaintiffs stated that they were not in violation of defendant's order. Defendant gave them ten seconds to leave the floor, and had them jailed for contempt when they refused. Later the same day, defendant entered an order which recited the above facts and found plaintiffs in contempt. Defendant ordered that plaintiffs would be released upon their assurance that they would comply with the April 23rd order. Plaintiffs were released following an emergency petition to the Idaho Supreme Court for a writ of habeas corpus.

This court previously granted summary judgment for defendant, holding that this suit was barred by absolute judicial immunity. This order was affirmed by the Court of Appeals, *Crooks v. Maynard*, 820 F.2d 329 (9th Cir.1987). The Supreme Court vacated the Ninth Circuit opinion and remanded it for reconsideration in light of *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). The circuit, in turn, remanded it to this court. *Crooks v. Maynard*, 851 F.2d 1562 (9th Cir.1988).

This case is again before the court on defendants' Motion for Summary Judgment.

## II. ANALYSIS

### A. *Eleventh Amendment*

■ Defendant first argues that this suit is precluded by the eleventh amendment to the United States Constitution, since defendant is sued for his acts as a state judge. He relies on *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). However, *Scheuer* held that holding a state official personally liable for damages for violation of federal constitutional rights under color of state law was not forbidden by the eleventh amendment. *Id.* at 237–38, 94 S.Ct. at 1687.

Defendant also states that any judgment against him would be satisfied from state monies, since, by Idaho statute, the state

---

**1.** In its entirety, this order read as follows:
"ADMINISTRATIVE ORDER

It has come to the attention of the Administrative District Judge that the Clerk of the District Court for Nez Perce County, Idaho, has hired a person to coordinate the duties of the deputy clerks working with the courts.

This appointment was made without the knowledge of the Administrative District Judge. No judge has had the opportunity to appraise the qualifications or integrity of this person.

Since the Clerk of the District Court assumed her duties, the morale of the deputy clerks has declined to the point that the quality of their work is deteriorating and is interfering with administration of justice.

NOW, THEREFORE, pursuant to the authority of I.C. 1–907, IT IS HEREBY ORDERED that the newly appointed coordinator shall perform no duties connected with the operations of the courts nor shall she interfere with the manner that the deputy clerks perform their duties.

IT IS FURTHER ORDERED that the Clerk of the District Court shall forthwith submit a plan whereby the working conditions be restored to their former excellent status or in the alternative, withdraw from further interference with the deputy clerks pursuit of their lawful duties.

DATED the 23rd day of April, 1985.

/s/ John H. Maynard
Administrative District Judge"

would probably be required to indemnify him. The Ninth Circuit has held that a state cannot expand its eleventh amendment immunity by indemnifying officials who are otherwise not immune. *Demery v. Kupperman,* 735 F.2d 1139 (9th Cir.1984). Thus, there is no eleventh amendment immunity in this case.

## B. *Judicial Immunity*

Defendant's second argument, which lies at the heart of this case, is that he is protected by absolute judicial immunity. The Ninth Circuit called upon this court to reconsider its order granting summary judgment in light of several Supreme Court precedents.

First, this court was called upon to consider whether Judge Maynard's actions were judicial in nature under *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). However, the Ninth Circuit has already considered this issue, and held that Judge Maynard was acting in a judicial capacity under *Stump. Crooks v. Maynard,* 820 F.2d 329, 333 (9th Cir. 1987).

Second, this court was called upon to determine whether Judge Maynard had jurisdiction to enter the order of contempt, and, if not, whether he was acting in the clear absence of all jurisdiction. As the circuit noted, this court has already answered the first issue in the affirmative, and the circuit has answered the second issue in the negative. *Id.* at 333–34.

With all respect to the circuit, the Supreme Court merely called upon the circuit to reconsider its opinion in light of *Forrester v. White.* After reviewing this case in light of the authorities referred to by the Ninth Circuit, this court believes the only new element in the analysis is the effect that *Forrester* might have on this case.

In *Forrester,* plaintiff was a probation officer for the Illinois state court system, hired by defendant state judge. The same judge also demoted and ultimately fired her. Plaintiff filed suit based on the Civil Rights Act of 1964 and 42 U.S.C. § 1983, and defendant claimed absolute judicial im-

munity. *Forrester v. White,* 484 U.S. at ——, 108 S.Ct. at 540–41, 98 L.Ed.2d at 561.

The Court held that absolute immunity attaches not to officials, but to functions. *Id.* 484 U.S. at ——, 108 S.Ct. at 544, 98 L.Ed.2d at 565. Thus, the mere fact that the defendant in that case happened to be a judge did not give him absolute immunity. This was true despite the fact that the actions which gave rise to the suit could only be carried out by a judge under Illinois law. *Id.* 484 U.S. at ——, 108 S.Ct. at 545–46, 98 L.Ed.2d at 567. The Court left open the possibility that some form of qualified executive immunity might apply. *Id.*

The Court further held that employment decisions such as demotion and firing of court employees are administrative functions, to which absolute judicial immunity does not attach. *Id.* 484 U.S. at ——, 108 S.Ct. at 545, 98 L.Ed.2d at 566. In issuing this holding, the Court acknowledged that such employment decisions may often have an impact on a judge's adjudicative functions. *Id.*

There are parallels between the case at bar and *Forrester.* Under Idaho Code § 1–907, administrative judges such as defendant have authority over the assignment and supervision of deputy court clerks. *Crooks v. Maynard,* 112 Idaho 312, 732 P.2d 281 (1987). Idaho Code § 1–907 empowers administrative judges to enter orders such as that entered here, which barred Plaintiff Holmes from working in the court system or interfering with the functioning of deputy clerks. *Id.* However, *Forrester* teaches that the fact that only judges can carry out these functions does not make them judicial acts.

There is one important distinction between the case at bar and *Forrester.* Here, defendant's decision was couched in terms of a court order. When plaintiffs violated this order, they were jailed for contempt.

Central to the immunity issue is how one wishes to characterize this case. As defendant argues it, this is a simple matter of plaintiffs being cited for contempt for disobeying defendant's order. According to

plaintiffs, this is a personnel dispute disguised as a judicial proceeding.

### 1. *Absolute Immunity.*

This case can reasonably be viewed as one of absolute judicial immunity. As defendant points out, in this case a judge issued an order, the order was disobeyed, and the disobeying parties were held in contempt. *Forrester* did not overrule the doctrine that hearing cases and entering orders are judicial functions to which absolute immunity attaches. *Forrester v. White*, 484 U.S. at ——, 108 S.Ct. at 544, 98 L.Ed.2d at 565.

There is an additional reason, not raised by defendant, for applying absolute immunity. It appears that Holmes was conducting a study of case management in the Second District. This court is well aware that the management of case movement often has important consequences on the decision-making process. Thus, defendant's orders can be viewed as part of a judge's policy-making function.

Finally, it is difficult to characterize defendant's actions as personnel actions. Defendant did not hire, fire, promote or demote Holmes. Rather, he forbade her from performing certain acts.

### 2. *Qualified Immunity.*

It is possible to argue that defendant's actions were administrative rather than judicial. One could conceivably claim that defendant's April 23, 1985, order was a de facto demotion of Holmes since he forbade her from carrying out certain duties. If this argument were accepted, this would be the same case as *Forrester*. To hold that the difference between absolute and qualified immunity rests upon whether the judge's decision is entered on a piece of paper entitled "order," violates the teaching of *Forrester* that immunity attaches to functions rather than persons. While the court has difficulty accepting plaintiffs' view that defendant made a personnel decision in the guise of a court order, it cannot rule out this argument.

Even accepting plaintiffs' argument, the fact that defendant's actions were in the form of court orders is not entirely irrelevant. As the Court noted in *Scheuer*, the precise scope of qualified immunity must take into account the functions and responsibilities of the officials involved. *Scheuer v. Rhodes*, 416 U.S. at 243, 94 S.Ct. at 1689–90. In this case, the Ninth Circuit pointed out that administrative functions of a court are often "essential to the functioning of the court." *Crooks v. Maynard*, 820 F.2d at 332. Also, obedience to court orders is crucial to smooth functioning of the courts. This is the teaching of *Walker v. Birmingham*, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967). In *Walker*, the Court affirmed contempt convictions for disobedience to an injunction which arguably impinged on first amendment rights of speech and assembly. Although the Court expressed serious doubts as to the constitutionality of the injunction, it held that disobedience to a direct court order was not a proper way to challenge its validity. Any concept of qualified immunity which might apply in this case must take these principles into account.

There is little guidance on the precise scope of qualified immunity in this case. *Forrester* left it to the Seventh Circuit to decide the issue on remand. *Forrester v. White*, 484 U.S. at ——, 108 S.Ct. at 545–46, 98 L.Ed.2d at 567. The Seventh Circuit, in turn, left the issue to the district court upon remand. *Forrester v. White*, 846 F.2d 29 (7th Cir.1988). If the district court has issued its decision, it has not yet been published. In the case at bar, neither the circuit nor the Supreme Court gave any guidance on the issue. This court has found no published decision which clearly defines the scope of qualified judicial immunity.

This circuit has defined qualified immunity for jury commissioners and directors of jury services. In *Greater Los Angeles Council on Deafness v. Zolin*, 812 F.2d 1103, 1109 (9th Cir.1987) (*GLAD*), the court held that these officials were entitled to qualified immunity for their decision to not provide interpreters for deaf jurors. Under this qualified immunity, they were immune so long as their conduct did not "violate clearly established statutory or constitutional rights of which a reasonable

person would have known." *Id.* This standard, which is a commonly-used standard for defining qualified immunity under 42 U.S.C. § 1983, seems appropriate.

■ However, as noted above, due consideration must be given to the fact that defendant's actions were in the form of court orders. Thus, in applying the *GLAD* standard to this case, the relevant conduct is defendant's administrative order and judgment of contempt. The issue then becomes whether defendant, in issuing these orders, violated clearly established statutory or constitutional rights of which a reasonable person would have known.

As noted above, the Idaho Supreme Court has already established that defendant had the power to issue the administrative order which plaintiffs were held to have violated. The separation of power between administrative judges and county clerks in Idaho is a matter of Idaho law. Absent some federal constitutional infirmity in the Idaho Supreme Court's decision, which plaintiffs do not even allege, this court will not disturb the Idaho court's holding. Thus, there is no clearly established federal right which was violated by defendant's April 23, 1985, order. The issue then turns to the findings of contempt and resulting incarceration.

In their briefing, plaintiffs have not referred to any specific constitutional or statutory rights which were violated. However, at oral argument, plaintiffs stated that the right at issue is the fourteenth amendment right not to be deprived of one's liberty without due process of law. It cannot be denied that plaintiffs' time in jail was a deprivation of liberty. The next step is to decide whether plaintiffs were afforded due process.

■ In this analysis, the first step is to determine the nature of the contempt. According to well-established rules, this was a case of civil contempt. When incarceration is imposed for contempt, the contempt is criminal if the incarceration is for a determinate period. The contempt is civil if the contemnor can secure his release by complying with conditions specified by the court. *Hicks v. Feiock*, 485 U.S. 624, ——,

108 S.Ct. 1423, 1429–31, 99 L.Ed.2d 721, 731–33 (1988). In this case, defendant's contempt order specifically provided that plaintiffs would be released upon their promises to defendant that they would comply with his administrative order. Because this case involves civil contempt, the constitutional protections which apply to criminal cases did not apply to defendant's contempt order. *Id.;* 485 U.S. at ——, 108 S.Ct. at 1434, 99 L.Ed.2d at 737.

■ In civil contempt, the contemnor is entitled to minimal due process. *Shillitani v. United States*, 384 U.S. 364, 371, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966). The basic components of due process are notice and opportunity to be heard. *Ex Parte Robinson*, 86 U.S. (19 Wall.) 505, 512–13, 22 L.Ed. 205 (1873). In summary contempt proceedings, the court must give the contemnor advance warning that he is at risk of being found in contempt. *In re Chaplain*, 621 F.2d 1272, 1276 (4th Cir. 1980). However, it is unclear whether any hearing is required prior to a summary judgment of contempt. As noted in *In re Chaplain*, citation, conviction and punishment will often occur all at once in such proceedings. *Id.* at 1276. Since summary contempt proceedings are used where contempt is committed in the presence of the court which finds contempt, there is little need for hearing, particularly in light of the need to avoid disruption of the court's work. *See id.* at 1277.

■ Even if it is assumed that some hearing is required in the summary contempt context, the need for hearing is quite limited. Once it is determined that a life, liberty or property interest is at stake, three factors are considered in determining what process must be followed before a person can be deprived of that interest. They are: (1) the importance of the private interest at stake; (2) the importance of the governmental interest at stake; and (3) the risk of erroneous deprivation of rights, and likelihood that additional procedural safeguards would reduce that risk. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

As already noted, in the summary contempt context, the judge who finds and punishes contempt is the same person who witnesses the contempt. The Supreme Court has noted that an opportunity to be heard will add little to the fact-finding function where the official deciding an issue is also the witness to the facts in the case. *Goss v. Lopez,* 419 U.S. 565, 584, 95 S.Ct. 729, 741, 42 L.Ed.2d 725 (1975).

In *Goss,* the Court considered the requirements of due process when a student in a public school is suspended for a short period. Where the person dealing out discipline is the same person who witnesses the infraction, it is sufficient that the person affected be given a limited, informal chance to tell his side of the story prior to imposition of discipline. *Id.* at 581–84, 95 S.Ct. at 739–41. This hearing can immediately follow notice of the intended action. *Id.* at 582, 95 S.Ct. at 740.

In this case, according to the established facts, defendant confronted plaintiffs in the second story lobby and told them to get off the second floor. Plaintiffs argued that they were not violating defendant's order, since they were not interfering with court administration. Defendant then told them they would be cited for contempt if they did not get off the floor in ten seconds. When they did not do so, defendant cited them for contempt. The notice and opportunity for hearing afforded plaintiffs in this case is the same as was held to be sufficient in *Goss.*

It might be argued that *Goss* is a poor analogy for this case. One's interest in being free from incarceration is more important than one's right to not be suspended from school for a short time without due process. By citing *Goss,* this court does not wish to trivialize the experience plaintiffs suffered. However, there is also a greater governmental interest at stake here than in *Goss.* Enforcement of court orders certainly outweighs enforcement of school discipline. Finally, the important lesson from *Goss* is that very informal notice and hearing will satisfy due process in a setting similar to that which exists in a summary contempt case.

In light of the above analysis, this court finds as a matter of law that defendant did not violate any clearly established right to due process.

Plaintiffs have argued two other infirmities in defendant's findings of contempt and orders of incarceration.

■ First, plaintiffs argue that defendant violated Idaho Code § 7–603, which permits summary contempt proceedings only when the contempt is committed "in the immediate view and presence of the court, or judge at chambers...." Idaho Code § 7–603 (1979). They claim summary proceedings were illegal here, since the alleged contempt was committed in defendant's view in a lobby in the Nez Perce County Courthouse, rather than in court or in chambers. There is no case law interpreting the above-quoted passage from Idaho Code § 7–603. While plaintiffs may be correct, the term "court" in Idaho Code § 7–603 may also refer to the person of the judge, acting in his official capacity, wherever he may be. Thus, no clearly established right is involved here. Also, this argument presents a state law right, not a federal right. Title 42 U.S.C. § 1983 only protects federally guaranteed rights.

■ Second, it is argued that defendant's judgment of contempt was erroneous, since plaintiffs were not, in fact, interfering with court administration as forbidden by the administrative order. An incorrect decision by a state judge is not a denial of due process, so long as the process by which the decision is made is consistent with due process. Were it otherwise, every disputed finding of fact by a state judge would give rise to a constitutional claim. The purpose of the judicial immunity doctrine is to prevent interference with a judge's adjudicative functions. *Forrester v. White,* 484 U.S. at ——, 108 S.Ct. at 544, 98 L.Ed.2d at 564–65.

## III. CONCLUSION AND ORDER

While some form of judicial immunity applies in this case, it is not clear whether defendant is protected by qualified or absolute judicial immunity. However, the issue

need not be decided. If the immunity is absolute, summary judgment must be granted. If the immunity is qualified, summary judgment must be granted since, on the stipulated and uncontroverted facts, there is no substantial issue of material fact that defendant violated any clearly established federal statutory or constitutional right.

This holding should in no way be read as approval of the methods used by Judge Maynard. Disputes between courts and clerks are bound to arise. In Idaho, this is complicated by the fact that the clerk is an elected constitutional official. When difficulties arise between the court and its clerks, this court, like the vast majority, solves them without resort to the court's draconian contempt powers.[2]

Based on the foregoing, and the court being fully advised in the premises,

IT IS HEREBY ORDERED that defendant's Motion for Summary Judgment should be, and is hereby, GRANTED.

---

2. The court notes that since this suit was filed, both Judge Maynard and Clerk Crooks have been voted out of office. Ultimately the ballot box is the preferred place to resolve disputes such as that which gave rise to this suit.