(No. 6594. February 8, 1939.)

STATE, Respondent, v. IRA J. TAYLOR, Appellant.

[87 Pac. (2d) 454.]

Bert H. Miller, Leo M. Breshahan, J. W. Galloway and George Donart, for Appellant.

J. W. Taylor, Attorney General, Lawrence B. Quinn, R. W. Beckwith, E. G. Elliott and D. R. Thomas, Assistant Attorneys General, and Willis C. Moffatt, Prosecuting Attorney for Ada County, for Respondent.

GIVENS, J.—Appellant's first assignment of error is that the attorney general or his deputies had no legal right to be present before the grand jury during any stage of its deliberations because of the inhibitions of section 19–1011, I. C. A., unchanged, except the designation of district to prosecuting attorney, since 1864, as follows:

" . . . . The prosecuting attorney of the county may at all times appear before the grand jury for the purpose of giving them information or advice relative to any matter cognizable by them, and may interrogate witnesses before them whenever they or he think it necessary, but no other person is permitted to be present during the sessions of the grand jury, except the members and witnesses actually under examination, and an interpreter, when necessary, and no person must be permitted to be present during the expressions of their opinions, or giving their votes upon any matter before them."

In 1887, section 65–1301, I. C. A., in its present form was adopted, containing subdivisions 5 and 7:

"It is the duty of the attorney-general:

"(5) To exercise supervisory powers over prosecuting attorneys in all matters pertaining to the duties of their offices, and from time to time require of them reports as to the condition of public business intrusted to their charge.

"(7) When required by the public service, to repair to any county in the state and assist the prosecuting attorney thereof in the discharge of his duties."

Under statutes somewhat similar to ours *Viers v. State,* 10 Okl. Cr. 28, 134 Pac. 80, 85; *State v. Seattle Gas & Elec. Co.,* 28 Wash. 488, 68 Pac. 946, 70 Pac. 114, and *Coblentz v. State,* 164 Md. 558, 166 Atl. 45, 88 A. L. R. 886, hold the attorney general may not go before the grand jury, while the following support the contrary rule: *State v. Rodman,* 57 N. D. 230, 221 N. W. 25, 27; *People v. Tru-Sport Pub. Co.,* 160 Misc. 628, 291 N. Y. Supp. 449; *State v. Sullivan,* 110 Mo. App. 75, 84 S. W. 105; *State v. District Court,* 19 N. D.

819, 124 N. W. 417, Ann. Cas. 1912D, 935; *Metzler v. United States,* 64 Fed. (2d) 203, 206; *People v. Hartenbower,* 283 Ill. 591, 119 N. E. 605, 609; *State v. State Board of Equalization,* 140 Wash. 433, 249 Pac. 996.

Under statutes identical with ours Montana held (1899) the attorney general might go before the grand jury:

" . . . . The supervisory power heretofore discussed always vests in the attorney general, and accompanies him wherever he may go in the discharge of his duties; but under subdivision 7, quoted, superadded to the duty of supervision is that of actual assistance to be rendered whenever the contingencies referred to in the section have arisen. Nor is there any limit whatever to the assistance to be given,—no point where it is to begin or to end, except the bound of the official duty of the county attorney. Just so long as the county attorney has a duty to discharge, and so far as he may go in discharging it, so long is it the right and obligation of the attorney general to actively assist him in the discharge of such duty; and equally far in executing the duty shall he go when the public service requires it, or when directed to assist by the governor.

. . . . . . . . . . . . . . . .

" . . . . The statutes defining the duties of the county attorney do not curtail or restrict in any manner whatsoever the duties or powers of the attorney general, or vest any authority in the county attorney exclusively where public service requires that the attorney general assist him. The attorney general may, in his assistance, do every act that the county attorney can perform, and, in his supervision, may even undo any that he has already done. The Statutes prescribing the duties of each are in perfect harmony, and a complete system is established by which the state is secured local counsel in all cases ordinarily arising, with general counsel to supervise, and to be present and assist in matters of extraordinary moment." (*State v. District Court,* 22 Mont. 25, 55 Pac. 916, 917, 918.)

In 1882 California decided *County of Sacramento v. The Central Pac. Ry. Co.,* 61 Cal. 250, under section 470, California Political Code, identical with 65-1301, I. C. A., hold-

ing relative to rights of the district attorney and attorney general, not as to being present in the grand jury room but generally, that:

"The District Attorney had the power to commence and prosecute the action, subject to the supervision of the Attorney General (Pol. Code, 470). The last named officer has power, whenever, in his opinion, the public service requires it, to 'assist' the District Attorney. (*Ibed*) When he thus assists the District Attorney, he may, by virtue of his 'supervisory power over the District Attorneys in all matters pertaining to the duties of their offices,' assume a paramount control and direction of the business he and the District Attorney are jointly conducting."

This court, in conformity with the general rule, has held that a statute adopted from another state is usually, though not conclusively, construed in accordance with the decisions of the courts of that state rendered prior to its adoption herein if their interpretation is reasonable. (*Stein v. Morrison*, 9 Ida. 426, 457, 75 Pac. 246; *Shoshone County v. Profitt*, 11 Ida. 763, 773, 84 Pac. 712; *In re Niday*, 15 Ida. 559, 568, 98 Pac. 845; *In re Schriber*, 19 Ida. 531, 535, 114 Pac. 29, 37 L. R. A., N. S., 693; *Merchants' Protective Assn. v. Jacobsen*, 22 Ida. 636, 172 Pac. 315; *Gallafent v. Tucker*, 48 Ida. 240, 281 Pac. 375; *Mochel v. Cleveland*, 51 Ida. 468, 5 Pac. (2d) 549; *Hanson v. Rogers*, 54 Ida. 360, 32 Pac. (2d) 126; *Mundell v. Swedlund*, 58 Ida. 209, 223, 71 Pac. (2d) 434.) Applying the above rule of statutory construction leads to the assumption that our adoption of sec. 65–1301, I. C. A., after the decision of *County of Sacramento v. The Central Pac. Ry. Co., supra,* carried with it the meaning that the attorney general is paramount in control and direction of the district (now prosecuting) attorney, which brings into force the reasoning in the Montana case that whatever the subordinate may do the principal may do, and considering the relative positions of the attorney general and prosecuting attorney in the scheme of enforcement of the criminal law such construction is not unreasonable. It would appear therefore that the words "prosecuting attorney" in sec. 19–1011, I. C. A., at least since the enactment of the original

sec. 63–1301, I. C. A., are to be considered generically as including any official attorney on the side of the prosecution not otherwise disqualified.

▮ Appellant moved to dismiss the indictment because it was really a presentment and that prior to his arrest he had never been held to answer by a committing magistrate for the offense charged, had no opportunity to examine the prospective members of the grand jury or interpose a challenge to the panel or individual members thereof and that the attorney general was prejudiced against appellant, and in support thereof filed his affidavit to the effect that prior to his arrest on the charge herein he had no knowledge the grand jury was investigating any of his official acts as warden of the Idaho State Penitentiary, and also filed the affidavit of W. H. Gess, his successor as warden, thus:

"Wm. H. Gess, being first duly sworn, deposes and says:

"That during the fall of 1937, and while he was warden of the Idaho State Penitentiary, and before the calling of the grand jury now in session in Ada County, Idaho, he had a conversation with J. W. Taylor, Attorney General of the State of Idaho, at his office in Boise, Idaho, relative to the affairs of the said penitentiary, and that during the course of said conversation the said Taylor told affiant that he, Taylor, wanted affiant to prepare two secure cells at the penitentiary as he was going to send affiant 'two distinguished gentlemen' to occupy said cells; that after further discussion of penitentiary affairs the said Taylor told affiant that he wanted him to prepare two secure cells as he was going to send him two distinguished gentlemen to occupy said cells; that hereupon affiant inquired of said Taylor the identity of said 'distinguished gentlemen' and the said Taylor informed affiant that one of them was affiant's 'predecessor as warden, Ira J. Taylor, and the other was Joe Stemmer, director of highways.' "

It is not disputed that the attorney general was in the grand jury room and examined witnesses, and in his counter-affidavit he does not deny prejudice but merely asserts he was doing what he considered his sworn duty. No authorities are submitted on the prejudice point and we therefore

confine ourselves to saying the showing of prejudice was not sufficient to justify holding the trial judge abused his discretion in denying the motion on this ground. (See 18 C. J. 1312, sec. 39; *People v. Hamberg,* 84 Cal. 468, 24 Pac. 298.)

Neither preliminary hearing, arrest, commitment or presentment are necessary prerequisites to indictment, and the attempt to distinguish between an indictment and a presentment, whatever its force might otherwise be, has no bearing on the validity of the indictment herein. (*Territory v. Staples,* 3 Ida. 35, 26 Pac. 166; *State v. Schieler,* 4 Ida. 120, 37 Pac. 272; *People v. Goldenson,* 76 Cal. 328, 19 Pac. 161, 168; *Fields v. State,* 5 Okl. Cr. 520, 115 Pac. 608; *In re Report of Grand Jury,* 152 Md. 616, 137 Atl. 370, 372; 31 C. J. 576, sec. 27.)

Appellant was indicted, tried and convicted under sec. 17–3202, I. C. A.:

"Every officer charged with the receipt, safe-keeping or disbursement of public moneys who neglects or fails to keep and pay over the same in the manner prescribed by law, is guilty of felony."

The evidence on the part of the prosecution showed that while warden of the penitentiary certain sums of money received from the sale of produce from the prison farm came into the hands of the chief clerk of the penitentiary and were never turned over to the state treasurer in compliance with sec. 57–1014, I. C. A., or otherwise, and the state contends these were so in appellant's possession under sec. 20–306, I. C. A., that though there is no connection appellant had actual possession or personally withheld the money or intended to profit by the transaction, he should have known of the derelictions of the chief clerk and was so criminally negligent in connection therewith as to be guilty under sec. 17–3202, I. C. A.

The trial court refused admission of two bonds of the chief clerk of the penitentiary; one covering the period from February 6, 1933, to February 6, 1935, and the other the period from February 6, 1935, to February 6, 1937. The latter bond covering the major portion of the time during which the alleged derelictions took place, was pertinent and admis-

734

sible as bearing on the degree of care appellant should have used under the duty imposed on him by sec. 20–306, I. C. A., in the care of the property and funds of the penitentiary, not as absolving appellant but to aid the jury in determining whether his conduct constituted criminal negligence as defined in *State v. McMahan,* 57 Ida. 240, 256, 65 Pac. (2d) 156, and its rejection was prejudicial.

 Appellant assigns as error Instruction 16:

"But you are instructed that the evidence need not demonstrate the guilt of the defendant beyond the possibility of his innocence; if the circumstances proved produce a moral conviction to the exclusion of every reasonable doubt, they need not be absolutely incompatible, on any reasonable hypothesis, with the innocence of the accused. While such evidence to be sufficient, must create more than a suspicion of guilt, a mere possibility of innocence will not prevent a conviction where the conclusion or inference of guilt is logical. A theory of innocence must be rational and must find its support in facts. You are not required to adopt an unreasonable theory or one not fairly founded on evidence. You are not required to give to circumstances a strained or artificial construction in determining whether they are consistent with innocence."

which was condemned in *State v. Hix,* 58 Ida. 730, 743, 78 Pac. (2d) 1003, wherein it was said:

"The italicized portions of the foregoing instruction are peculiarly confusing and the capitalized portion is clearly prejudicial. The instruction as a whole would most likely lead a jury to conclude that there must be *some evidence* in the case, either on the part of the defendant or by the state, which raises the 'inference' and gives rise to the 'conclusion' that the defendant is not guilty; in other words, that the defendant's 'theory of innocence must be rational and must find its support *in facts or . . . . on evidence."* Whereas, the law allows a defendant to rest upon the lack of evidence on the part of the state to prove him guilty and the primary inferences are that he is innocent. The proof must establish his guilt. The absence of proof whether it

be circumstantial or direct, entitles the defendant to rest on the legal inference that he is innocent.''

Thus the instruction was condemned, not because the charge therein was murder nor because the evidence was circum-stantial but because ''it could not help but confuse the jury and leave them in doubt as to just how much *must be proven and how much* can be taken as 'a conclusion or inference of guilt,' '' therefore the reason for holding the instruction bad is just as controlling here as in that case, and was erroneously prejudicial to appellant.

Appellant assigns as error the giving of Instruction No. 4: ''You are further instructed that the word 'neglect' means a want of such attention to the nature of probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns.'' The definition given is of civil negligence and not criminal negligence and is erroneous. Criminal negligence is gross negligence, such negligence as amounts to a wanton, flagrant, or reckless disregard of consequences or wilful indifference of the safety or rights of others (*State v. McMahan, supra*), which may be by either or both commission or omission. (*Philby v. State*, (Okl. Cr.) 76 Pac. (2d) 412; *State v. Coulter*, (Mo.) 204 S. W. 5.)

Respondent seeks to avert the effect of this error with the contention that it is not error to erroneously instruct if no request for a correct instruction is made. The authorities cited as so holding however go only to the *omission* or failure to instruct; but where an *erroneous* instruction is *given*, it is not necessary to request a correct instruction in order to preserve the right of attack. (*State v. Harness*, 10 Ida. 18, 76 Pac. 788; *State v. Dunlap*, 40 Ida. 630, 235 Pac. 432; *State v. Jurko*, 42 Ida. 319, 245 Pac. 685; *State v. Dunn*, 44 Ida. 636, 258 Pac. 553; *State v. Roby*, 43 Ida. 724, 254 Pac. 210.)

Appellant's requested Instruction No. 6 was as follows:

''You are instructed that it is charged in the indictment that between the 2nd day of April, 1935 and the 13th day of March, 1937 there came into the possession, care, custody and control of the defendant the sum of $858.09 public money

of the State of Idaho, which was received by him in his official position as warden of the Idaho State Penitentiary and that he neglected and failed to keep and pay said sum over to the State Treasurer of the State of Idaho, as prescribed by law. 'Neglect' imports a want of such attention to the nature of probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns. It means the omission to do something which a reasonably prudent man, guided by those ordinary considerations which ordinarily regulate human or business affairs, would do, or the doing of something which a reasonably prudent man would not do. If, then, you find from the evidence in this case that the defendant, in his official conduct, exercised that degree of care which a reasonably prudent man would exercise under like circumstances, you should acquit the defendant.''

Indorsed ''Not given'' by the trial court.

Although Instruction No. 4 given by the court was similar in part to the above-requested instruction, appellant's requested Instruction No. 4 as to the definition of criminal negligence was substantially correct and was not given:

''You are instructed that criminal negligence necessary to constitute an element of crime is gross negligence or reckless disregard of consequences and of the rights of others; mere failure to exercise ordinary care is insufficient to constitute criminal negligence.''

The giving of the erroneous instruction by the court must therefore be considered in connection with appellant's requests which conflicted with each other and being partially erroneous constituted at least an approach to the realm of invited error. (*Knollin & Co. v. Jones,* 7 Ida. 466, 63 Pac. 638; *American Bonding Co. v. Regents of University,* 11 Ida. 163, 81 Pac. 604; *Gaskill v. Washington Water Power Co.,* 17 Ida. 128, 105 Pac. 51; *Dover Lumber Co. v. Case,* 31 Ida. 276, 170 Pac. 108; *State v. Pettit,* 33 Ida. 326, 338, 193 Pac. 1015; *State v. Breyer,* 40 Ida. 324, 338, 232 Pac. 560; *Frank v. Frank,* 47 Ida. 217, 273 Pac. 943; *Weed v. Idaho Copper Co.,* 51 Ida. 737, 760, 10 Pac. (2d) 613; *State v. Orr,* 53 Ida. 452, 461, 24 Pac. (2d) 679.)

If the giving of instruction numbered 4 and the failure to properly define criminal negligence and, by the instructions, to properly apply sec. 17–114, I. C. A., to the facts of the case constituted the only errors in the trial, they might thus be held to have been waived by appellant in requesting the judge to instruct the jury on the subject of negligence by giving the rule applicable to civil cases. In view of the fact that the judgment must be reversed because of error heretofore pointed out in instruction numbered 16, we do not rule on the effect of giving instruction numbered 4, and failure to give an instruction on criminal negligence, but as further elucidated hereafter call attention to it for guidance in a new trial of the case.

Respondent contends that, even though an erroneous instruction has been given in a criminal case, it is not prejudicial to the defendant if the evidence of his guilt be so clear and convincing that the jury could not have failed to convict him without its members violating their oaths. In support of this contention respondent cites: sec. 19–2719, I. C. A.; *State v. Bond,* 12 Ida. 424, 86 Pac. 43; *State v. Marren,* 17 Ida. 766, 107 Pac. 993; *State v. Dong Sing,* 35 Ida. 616, 208 Pac. 860; *State v. Silva,* 21 Ida. 247, 120 Pac. 835; *State v. Brill,* 21 Ida. 269, 121 Pac. 79; *State v. Orr,* 53 Ida. 452, 24 Pac. (2d) 679; *State v. Jester,* 46 Ida. 561, 270 Pac. 417; *State v. Terry,* 50 Ida. 283, 295 Pac. 427.

As, however, a careful scrutiny of the above cases discloses, this rule has been and should be guardedly applied, otherwise art. 1, sec. 7, guaranteeing the right to trial by jury, which means a jury which has not been misled by erroneous instructions to a defendant's prejudice, will be violated.

In this case the evidence presented questions of fact which necessitated the verdict of a properly instructed jury for their determination.

Animadverting to the phase of the case concerning knowledge and intent, in connection with a proper definition of criminal negligence the court should have given as an instruction the substance of sec. 17–114, I. C. A., ad-

monishing the jury that the intent there mentioned is not an intent to commit a crime but is merely the intent to knowingly perform the interdicted act, or by criminal negligence the failure to perform the required act, i. e., herein the act of receiving either actually or constructively and the act of knowingly or through criminal negligence not turning over the money involved herein, or knowingly or through criminal negligence failing to see that the money, though only constructively and not actually in appellant's possession, was turned over to the state treasurer in compliance with the statute, *supra*.

Though many cases have confused the two intents considered herein, a specific intent such as is necessary in embezzlement, larceny, making false report with intent to deceive, etc., is not an ingredient of an offense under sec. 17–3202, I. C. A. In prosecutions under sec. 17–3202, I. C. A., there must, however, be by sec. 17–114, I. C. A., what the legislature has declared an essential of every offense, "union or joint operation of act and intent," i. e., as explained above, knowledge and intent to do the act (not necessarily commit a crime or do wrong), or criminal negligence as above defined, and *State v. Browne,* 4 Ida. 723, 44 Pac. 552, though discussing an offense under the original of sec. 17–3201, I. C. A., and the later cases construing *State v. Browne, supra,* and others, make this clear.

"But it is insisted that intent is a necessary ingredient of very crime. This is true in the sense that the act must have been committed by the defendant voluntarily and not under duress or acting under compulsion of superior force. Aside from this, however, the statute under consideration requires no special wilful, malicious, or wrongful intent whatever. We had many statutes of this character, and this court has had occasion to hold that such a statute requires no specific intent on the part of the defendant."

(*State v. Henzell,* 17 Ida. 725, 734, 107 Pac. 67, 27 L. R. A., N. S., 159; *State v. Smith,* 48 Ida. 558, 562, 283 Pac. 529; *State v. Cochrane,* 51 Ida. 521, 527, 6 Pac. (2d) 489; *People v. Dillon,* 199 Cal. 1, 248 Pac. 230, 232; *People v. Forbath,* 5 Cal. App. Supp. (2d) 767, 42 Pac. (2d) 108; *People v.*

*Johnson,* 14 Cal. App. (2d) 373, 58 Pac. (2d) 211, 213; 16 C. J. 74.)

Section 17–114, I. C. A., has been held applicable to offenses in the same category, so far as the point immediately considered is concerned, with sec. 17–3202. (*In re Baugh,* 30 Ida. 387, 391, 164 Pac. 529; *State v. Sheehan,* 33 Ida. 103, 107, 190 Pac. 71; *State v. Johnson,* 39 Ida. 440, 227 Pac. 1052.)

■■■■ Those entrusted with the care and safekeeping of public funds are held to strict accountability for the safeguarding of such funds and compliance with the statutes governing the same, but to sustain a conviction in a criminal case more must be proven in connection therewith than will justify recovery in a civil suit. (*Bonneville County v. Standard Acc. Ins. Co.,* 57 Ida. 657, 67 Pac. (2d) 904.)

Since a new trial is ordered we do not discuss the sufficiency of the evidence, and the other errors assigned not considered above are unimportant.

Judgment reversed and cause remanded with instructions to grant a new trial.

Morgan, J., and Downing and Buckner, D. JJ., concur.

REED, D. J.—I concur in the opinion and judgment as set forth above, that the cause should be reversed and remanded for a new trial. However, I am of the opinion that the action of the lower court in rejecting the evidence offered by the defendant to the effect that defendant's inferior officer was under bond was not error and for my reasons, I advance the following:

The duties and obligations of the defendant are fixed by law and when funds come into his hands belonging to the state he is charged with the duty of accounting and paying over to the state the same by reason of his office, and the fact that some inferior officer may be under bond is no reason why the defendant should be excused from complying with the law.