922 P.2d 395

**Gara B. NEWMAN, duly elected prosecutor of Minidoka County, Petitioner,**

v.

**Hon. Alan G. LANCE, Attorney General for the State of Idaho, Respondent.**

**No. 23100.**

Supreme Court of Idaho.

Aug. 2, 1996.

Peña Law Offices, Rupert, for petitioner. Raymundo G. Peña, argued.

Alan G. Lance, Attorney General; Michael A. Henderson, Deputy Attorney General, argued, Boise, for respondent.

PER CURIAM.

This matter is before the Court on PETITION FOR ALTERNATIVE WRIT OF PROHIBITION, pursuant to I.C. §§ 7–401 through 7–404, filed by the duly elected Prosecutor of Minidoka County seeking an alternative writ of prohibition from this Court against the action of the Attorney General "assuming prosecutorial responsibility" to the exclusion of the duly elected Prosecutor of Minidoka County in what are designated as the *Hood, Butcher* and *Diaz* cases.

The issue, as framed by the Attorney General in response to the Order to Show Cause issued by this Court pursuant to the Petition for Alternative Writ of Prohibition, is as follows:

Does the Attorney General have the authority, pursuant to his supervisory powers over Prosecuting Attorneys and his common law power and authority, to appear in a criminal case and assume control and direction of the case on behalf of the state?

## I.

### BACKGROUND & PRIOR PROCEEDINGS

A criminal complaint was brought by the Minidoka County Prosecutor against Kody Shane Butcher and Jesus Flores Diaz, Jr., charging them with first degree murder of Blake Morgan. The Minidoka County Prosecutor also filed a criminal complaint against Corey Hood, charging Hood with first degree murder. Hood allegedly murdered Mae Hood and Wendy Hunter.

In a letter dated June 20, 1996, the Minidoka County Prosecutor requested the Attorney General's assistance in prosecuting and investigating the above-referenced homicide cases. The Minidoka County Prosecutor explained that, "[s]pecifically we need help with

follow up investigations in all three murders and I need an experienced trial attorney to advise me in trial strategy and assist in the ultimate trials in these cases."

On June 25, 1996, the Minidoka County Prosecutor wrote another letter to the Attorney General's office, again requesting the assistance of the Attorney General and stating that the above-referenced homicide cases would "remain my cases with me or my office to have the final say so and control in any major decisions pertaining to strategy, pleadings or tactics."

On June 26, 1996, the Attorney General's office responded to the Minidoka County Prosecutor's request for prosecutorial assistance. The Attorney General approved the Minidoka County Prosecutor's "request for the appointment of the Attorney General or his delegee [sic] as special prosecuting attorney in these matters." The Attorney General's June 26, 1996 letter, instructed the Minidoka County Prosecutor to "immediately file an Idaho Code § 31–2603(a) petition to the Fifth Judicial District Court for that appointment" and informed the Minidoka County Prosecutor that once the Attorney General was "appointed special prosecutor, all final decisions with respect to investigation and prosecution shall be made by our office."

On June 27, 1996, the Minidoka County Prosecutor responded to the Attorney General's June 26, 1996 letter. The Minidoka County Prosecutor's June 27, 1996 letter, described the sequence of events leading up to the Minidoka County Prosecutor's June 27, 1996 letter, as follows:

I first contacted you by telephone on Tuesday, June 18, 1996 with a request for prosecutorial assistance in the homicide cases which have taken place in Minidoka County in the last three months.... [Y]ou asked that I draft a letter to you setting out the help we needed from you [sic] office which I did the next day and sent to you. You stated you would respond to my letter sometime during the week of the 24th.

The Minidoka County Prosecutor's June 27, 1996 letter, stated that while she was meeting with the Attorney General's office regarding her request for assistance, it was never indicated that the Attorney General's assistance would be conditioned upon the Minidoka County Prosecutor's office relinquishing all prosecutorial control of the homicide cases to the Attorney General. The Minidoka County Prosecutor declined the Attorney General's offer of assistance, stating that she did not "wish to relinquish total control of the Blake Morgan murder to [the Attorney General's] office as [the Minidoka County Prosecutor did] not feel that would be in the best interests of Minidoka County."

On July 8, 1996, the Attorney General wrote a letter to the Minidoka County Prosecutor, informing her that:

I have grave concern regarding the preparation and presentation to date of the above-entitled cases. Therefore, pursuant to my supervisory powers contained in Idaho Code § 67–1401 as recognized by the Idaho Supreme Court in *State v. Taylor*, 59 Idaho 724 [87 P.2d 454] (1939), I am hereby notifying you that my office is now assuming exclusive prosecutorial responsibility for these cases. I am simultaneously filing with the Court a notice of appearance in these cases. I am taking this action on behalf of the people of the State of Idaho.

The Attorney General instructed the Minidoka County Prosecutor to "arrange for the immediate turnover of the case files and all related documents" in the above-referenced homicide cases, to the Attorney General's office. The defendants in the above-referenced homicide cases subsequently filed motions to strike the Attorney General's notice of appearance in each of the homicide cases.

On July 10, 1996, the Minidoka County Prosecutor wrote a letter to the Attorney General. The Minidoka County Prosecutor's July 10, 1996 letter, disagreed with the Attorney General's assertion that the Attorney General has "exclusive prosecutorial authority" over the above-referenced homicide cases. The Minidoka County Prosecutor contended that Idaho Code § 31–2604 clearly establishes that it is the duty of the county prosecuting attorney to prosecute all criminal actions in the county and that Idaho Code § 31–2227 states that the primary responsibility of criminal prosecutions is placed with

the County Prosecuting Attorney. The Minidoka County Prosecutor declined to provide the Attorney General the files in the above-referenced homicide cases, noting that her request for assistance in the form of a Deputy Attorney General to act as co-counsel assisting in the litigation of the *Diaz* and *Butcher* homicide cases was denied by the Attorney General. The Minidoka County Prosecutor rejected the Attorney General's demand that the Minidoka County Prosecutor petition the court to appoint a Deputy Attorney General to take exclusive control of the above-referenced homicide cases.

On July 10, 1996, the Minidoka County Prosecutor filed an application for an alternative writ of prohibition with the Idaho Supreme Court. On July 11, 1996, the Idaho Supreme Court issued an Order to Show Cause, ordering the Attorney General to show cause why an alternative writ of prohibition should not be issued.

On July 15, 1996, the Minidoka County Commissioners filed in the District Court of the Fifth Judicial District a motion to intervene and a petition to appoint the Attorney General as special prosecutor in each of the three above-referenced homicide cases, pursuant to section 31–2603(a) of the Idaho Code.

On July 16, 1996, oral argument was heard by this Court regarding the Minidoka County Prosecutor's Petition for an Alternative Writ of Prohibition. On July 16, 1996, this Court ordered that "all judicial proceedings in the matter of the *State of Idaho v. Corey Hood; State of Idaho v. Kody Shane Butcher;* and *State of Idaho v. Jesus Flores Diaz, Jr.,* are *stayed,* save and except for the Petition to Appoint Special Prosecutor by the Minidoka County Commissioners in each of said matters, subject to further order of this Court."

On July 24, 1996, the district court heard oral argument regarding the Minidoka County Commissioners's Petition to Appoint Special Prosecutor. The district court denied the Minidoka County Commissioners's Petition to Appoint Special Prosecutor by order filed July 29, 1996.

As we stated in our July 16, 1996 Order, "[t]he denial of [the Minidoka County Commissioners's] Petition [to Appoint Special Prosecutor] by the District Court would en-able this Court to deal with all issues concerning this matter at one time." We now address the Minidoka County Prosecutor's Petition for an Alternative Writ of Prohibition.

## II.

### ANALYSIS

■ Under art. IV, section 1 of the Idaho Constitution, the Attorney General, as one of the executive officers of the State of Idaho is to "perform such duties as are prescribed by this Constitution and as may be prescribed by law." Those duties of the Attorney General prescribed by law are set forth in section 67–1401 of the Idaho Code. Subsections 6, 8, and 12 of I.C. § 67–1401, upon which the Attorney General relies, are as follows:

Except as otherwise provided in this chapter, it is the duty of the attorney general: ...

6. To exercise supervisory powers over prosecuting attorneys in all matters pertaining to the duties of their offices, and from time to time require of them reports as to the condition of public business entrusted to their charge....

8. When required by the public service, to repair to any county in the state and assist the prosecuting attorney thereof in the discharge of duties....

12. To exercise all the common law power and authority usually appertaining to the office and to discharge the other duties prescribed by law.

I.C. § 67–1401(6), (8), (12).

The Attorney General additionally relies upon the authority of this Court contained in *State v. Taylor,* 59 Idaho 724, 87 P.2d 454 (1939), and *State v. Edmonson,* 113 Idaho 230, 743 P.2d 459 (1987).

The issue in *Taylor* was whether the Attorney General, or his deputies, had a right to appear before a grand jury that had charged the defendant Taylor. *Taylor,* 59 Idaho at 729, 87 P.2d at 456. In *Taylor,* the Attorney General's deputy had appeared with the consent of the Prosecuting Attorney and had examined witnesses. The *Taylor* Court upheld the right of the Attorney General, under those circumstances, to appear before the grand jury, citing the provisions substantially the same as contained in I.C.

§ 67–1401(6) and (8), as well as cases from Montana and California, to wit: *State ex rel. Nolan v. District Court,* 22 Mont. 25, 55 P. 916 (1899), and *County of Sacramento v. Central Pac. R.R. Co.,* 61 Cal. 250 (1882). *Taylor,* 59 Idaho at 730–32, 87 P.2d at 457–58. The Attorney General relies upon the language in *Taylor* which stated:

> The supervisory power heretofore discussed always vests in the attorney general, and accompanies him wherever he may go in the discharge of his duties. . . . The statutes defining the duties of the county attorney do not curtail or restrict in any manner whatsoever the duties or powers of the attorney general, or vest any authority in the county attorney exclusively where public service requires that the attorney general assist him. The attorney general may, in his assistance, do every act that the county attorney can perform, and, do every act that the county attorney can perform, and, in his supervision, may even undo any that he has already done. The Statutes prescribing the duties of each are in perfect harmony, and a complete system is established by which the state is secured local counsel in all cases ordinarily arising, with general counsel to supervise, and to be present and assist in matters of extraordinary moment.

*Taylor,* 59 Idaho at 730, 87 P.2d at 457 (quoting *State ex rel. Nolan,* 55 P. at 917–18). The above-quoted language in *Taylor,* which the Attorney General relies upon in support of his assertion that the Attorney General has the authority to exercise "paramount control and direction" of criminal cases in which the Attorney General appears was dictum. The *Taylor* Court did not consider the issue of whether the Attorney General has the authority to exercise "paramount control and direction" in criminal cases.

In *Edmonson* the issue again was a defendant's challenge to the presence of an attorney with the Department of Law Enforcement before a grand jury. *Edmonson,* 113 Idaho at 240, 743 P.2d at 469. As in *Taylor,* the attorney with the Department of Law Enforcement appeared before the grand jury with the consent of the Prosecuting Attorney. The *Edmonson* Court held that the attorney with the Department of Law Enforcement properly appeared before the grand jury,

noting that the Attorney General is an extension of the prosecutor. *Id.*

The language in *Taylor* and *Edmonson* relied upon by the Attorney General is dictum, as it was not necessary to the resolution of the issue before the Courts.

This Court has not addressed the issue of the Attorney General appearing in a criminal case and assuming control and direction of the case on behalf of the state in opposition to the duly elected Prosecuting Attorney of the jurisdiction involved.

Idaho Code § 67–1401(6) vests in the Attorney General "supervisory powers" over Prosecuting Attorneys. No definition of "supervisory" contemplates the exclusion of the individual or office being supervised. Supervision is defined as "a critical watching and directing" of a course of action. MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1184 (10th ed. 1993). To "supervise" is to have general oversight over a matter. BLACK'S LAW DICTIONARY 1438 (6th ed. 1990).

Idaho Code § 67–1401(8) provides for the Attorney General "assisting" the Prosecuting Attorney in the discharge of assigned duties. In the instant case, the Prosecutor of Minidoka County sought the "assistance" of the Attorney General. The Attorney General denied that "assistance" unless the Attorney General was to be paramount in all matters. The language of I.C. § 67–1401(8) contemplates a collaborative effort between the Attorney General and the Prosecuting Attorney, not the functioning of one to the exclusion of the other.

Idaho Code § 67–1401(12) contains the language added by the 1995 Idaho Legislature as contained in the 1995 Idaho Sess. Laws, S.B. 1217, ch. 141, § 1, pp. 599, 601, upon which the Attorney General relies: "exercise all the common law power and authority usually appertaining to the office." This language was added pursuant to the request of the Attorney General in seeking the consolidation of all of the attorneys representing the various departments of the state. The effect of the 1995 amendment sought by the Attorney General was to make the Attorney General the chief legal officer of the departments of state government and to give the Attorney General power to hire, and fire, and direct the efforts of all attorneys working for

state departments, with certain notable exceptions. This language did not grant any broader power relative to the relationship between the Attorney General and the County Prosecuting Attorneys than what already was contained in I.C. § 67–1401.

The duties of the Prosecuting Attorney are contained in I.C. § 31–2604 as follows:

1. To prosecute or defend all actions, applications or motions, civil or criminal, in the district court of his county in which the people, or the state, or the county, are interested, or are a party; and when the place of trial is changed in any such action or proceeding to another county, he must prosecute or defend the same in such other county.

2. To prosecute all felony criminal actions, irrespective of whom the arresting officer is; to prosecute all misdemeanor or infraction actions for violation of all state laws or county ordinances when the arresting or charging officer is a state or county employee; to conduct preliminary criminal examinations which may be had before magistrates; to prosecute or defend all civil actions in which the county or state is interested; and when a written contract to do so exists between the prosecuting attorney and a city, to prosecute violations for state misdemeanors and infractions and violations of county or city ordinances committed within the municipal limits of that city when the arresting or charging officer is a city employee.

3. To give advice to the board of county commissioners, and other public officers of his county, when requested in all public matters arising in the conduct of the public business entrusted to the care of such officers.

4. To attend, when requested by any grand jury for the purpose of examining witnesses before them; to draw bills of indictments, informations and accusations; to issue subpoenas and other process requiring the attendance of witnesses.

5. On the first Monday of each month to settle with the auditor, and pay over all money collected or received by him during the preceding month, belonging to the county or state, to the county treasurer, taking his receipt therefor, and to file, on the first Monday of October in each year, in the office of the auditor of his county, an account verified by his affidavit, of all money received by him during the preceding year, by virtue of his office, for fines, forfeitures, penalties or costs, specifying the name of each person from whom he receives the same, the amount received from each, and the cause for which the same was paid.

6. To perform all other duties required of him by any law.

I.C. § 31–2604.

The Legislature of the State of Idaho has set forth a total scheme concerning the relationship of the Attorney General and the Prosecutors in providing for a method to provide assistance to the Prosecutor or to obtain the enforcement of the penal laws of the State of Idaho when the Prosecutor fails to properly function.

Idaho Code § 67–1401(6) gives supervisory power to the Attorney General over the functioning of the Prosecuting Attorneys in the State of Idaho; I.C. § 67–1401(8) provides for the Attorney General to assist the Prosecuting Attorney when such assistance is required.

Under I.C. § 31–2603(a) the Prosecuting Attorney is authorized to petition the District Court for the appointment of a suitable person to perform the duties of the Prosecutor if the Prosecutor is unable, for specified reasons, to perform.

Idaho Code § 31–2603(a) also provides for the petitioning by the Board of County Commissioners, when the Prosecutor is "unable to attend to his duties," to appoint a suitable person to perform the duties of the Prosecutor.

The legislature has made it the primary obligation of the Prosecutor to enforce the state penal laws:

Irrespective of police powers vested by statute in state, county, and municipal officers, it is hereby declared to be the policy of the state of Idaho that the primary duty of enforcing all the penal provisions of any and all statutes of this state, in any court, is vested in the sheriff and prosecuting attorney of each of the several counties.

I.C. § 31–2227.

Read together, these statutory provisions provide a process contemplated by the Legis-

lature to ensure the effective enforcement of the penal laws of the State of Idaho.

## III.

## CONCLUSION

For the reasons stated, the Petition for an Alternative Writ of Prohibition prohibiting the Attorney General from asserting dominion and control over the cases in Minidoka County is **GRANTED.** The stay order previously entered by this Court is dissolved.