984 P.2d 710

**Raymundo G. PENA, Plaintiff–Respondent,**

v.

**MINIDOKA COUNTY, Defendant–Appellant.**

No. 24140.

Supreme Court of Idaho, Boise, December 1998 Term.

July 28, 1999.

Parsons, Smith & Stone, Burley, for appellant. William A. Parsons argued.

E. Lee Schlender Chartered, Hailey, for respondent. E. Lee Schlender argued.

WALTERS, Justice.

This case involves a dispute over compensation alleged to be due from Minidoka County for legal services performed by Raymundo Pena pursuant to a contract with the county prosecutor. The district court granted Pena's motions for summary judgment, holding that the contract entered into by the

prosecutor was binding on the Minidoka County commissioners and that, as a matter of law, Pena was a county employee entitled to recover treble damages for wages due him under the contract. We affirm the summary judgment in part and vacate it in part, remanding the case for further proceedings.

## FACTS AND PROCEDURE

In June of 1996 the Minidoka County Prosecutor, Gara Newman, requested supplementary funds from the county commissioners to allow her to hire one or more attorneys to assist her with regard to three upcoming major criminal prosecutions.[1] The commissioners granted her request and allocated funds for that purpose. After receipt of the commissioners' letter authorizing $15,000 for attorney services and additional monies for expenses, the prosecutor hired Raymundo Pena to perform the duties of deputy prosecutor pursuant to a contract which specified an hourly rate of $125 per hour for a period to continue until expressly discharged by the prosecutor. The contract with Pena, unlike the contracts entered into with other co-counsel engaged in regard to the murder prosecutions, was never reduced to writing or submitted to the commissioners.

Pena rendered legal services pursuant to his contract with the prosecutor: (a) as a deputy in the pending murder case of *State v. Hood;* (b) on pursuing a petition for writ of prohibition to preclude the State Attorney General from taking over the murder cases from the Minidoka County Prosecutor; and (c) in defense of an action brought by the commissioners seeking to have the Attorney General appointed to prosecute the murder cases.[2] Upon completion of his services in August of 1996, Pena submitted a bill to the prosecutor which was forwarded to the county commissioners for payment. The commissioners refused to pay Pena on the grounds

that they had not been a party to the contract with Pena and had not approved either Pena's selection or his rate of pay.[3]

Pena brought an action in district court against the county for recovery of wages due under the contract, including a claim for treble damages due on account of the unpaid wages. The county answered the complaint denying any obligation under the contract between Pena and the prosecutor. Pena then moved for summary judgment, which the district court granted in part, concluding that the contract was valid to bind the commissioners even though they had not given their prior approval to hiring Pena. Because the district court found that a genuine issue of fact remained as to whether Pena was an employee of the county, the district court denied the summary judgment in part. On Pena's second motion for summary judgment, following the denial of the county's motion for reconsideration of the first order on summary judgment, the district court found as a matter of law that Pena was a county employee and therefore subject to the Claim for Wages Act. The district court entered judgment in favor of Pena, including a treble damage award, plus interest on the base amount of wages due at the statutorily applied rate from August 30, 1996. The county appeals.

## STANDARD OF REVIEW

Summary judgment shall be rendered if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *Idaho Bldg. Contractors Ass'n v. City of Coeur d'Alene,* 126 Idaho 740, 742, 890 P.2d 326, 328 (1995); *Avila v. Wahlquist,* 126 Idaho 745, 747, 890 P.2d 331,

---

1. Murder charges were filed in *State v. Hood,* 96–694, *State v. Diaz,* 96–462, and *State v. Butcher,* 96–461, early in the summer of 1996. In response to the heavy burden imposed upon the prosecutor's office and resources, the prosecutor took steps to obtain authorization and additional funds to engage co-counsel to assist in these prosecutions.

2. *See Newman v. Lance,* 129 Idaho 98, 922 P.2d 395 (1996)(granting writ of prohibition and securing authority of the county prosecutor to prosecute the murder cases to the exclusion of the Attorney General's office).

3. The denial of Pena's request for payment can be found in the September 23, 1996, minutes of the commissioners' meeting, although no reasons for the denial are stated therein.

333 (1995). We will construe the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences and conclusions in that party's favor. *Thompson v. Pike,* 125 Idaho 897, 899, 876 P.2d 595, 597 (1994). The non-moving party's case, however, must be anchored in something more than speculation, and a mere scintilla of evidence is not enough to create a genuine issue of fact. *R.G. Nelson, A.I.A. v. Steer,* 118 Idaho 409, 410, 797 P.2d 117, 118 (1990).

The scope of our review is limited to determining only whether there exist unresolved genuine issues of material fact, and whether Pena is entitled to judgment as a matter of law. *See Derting v. Walker,* 112 Idaho 1055, 1057, 739 P.2d 354, 356 (1987).

## DISCUSSION

### I.

The county argues that the contract between Pena and the prosecutor is unenforceable as against Minidoka County because the commissioners did not participate in fixing the amount of compensation, the method of payment or the scope of employment. We disagree.

### A. Compensation for services as deputy prosecutor

Article XVIII, § 6 of the state constitution provides that "[t]he county commissioners may employ counsel when necessary." The provision, however, was never intended to permit the board to employ counsel over matters, such as the prosecution of criminal cases, of which other officers are given control. *Conger v. Comm'rs of Latah County,* 5 Idaho 347, 355, 48 P. 1064, 1066 (1897). Under Idaho Code Section 31–2602, the jurisdiction of the commissioners and the prosecuting attorney in appointing deputies is delineated: "[e]ach prosecuting attorney may be empowered by the board of county commissioners of his county to appoint deputy prosecuting attorneys upon a finding by such board of county commissioners that such appointments are necessary for the proper conduct of his office." I.C. § 31–2602.

Before the commissioners can legally empower the appointment of a deputy by a county officer, they must first determine whether a new deputy is necessary. *Taylor v. Canyon County,* 6 Idaho 466, 470, 56 P. 168, 169–70 (1899)(as applicable to county officers named in Article XVIII, § 6). Upon a showing to the proper tribunal that a deputy or clerical assistant is needed, the county commissioners must authorize the appointment. *Crooks v. Maynard,* 112 Idaho 312, 317, 732 P.2d 281, 282 (1987). The county commissioners' power, however, is limited and cannot be exercised to override every hiring decision, *id.,* or to impose qualifications in the hiring process. *Estep v. Comm'rs of Boundary County,* 122 Idaho 345, 834 P.2d 862 (1992).

*Barth v. Canyon County,* 128 Idaho 707, 918 P.2d 576 (1996), is cited by the county in support of its position that it is not obligated to pay Pena's compensation because the commissioners were not the ones to fix his compensation. The Court in *Barth* denied the deputy sheriff's claim for additional wages in his new position as acting lieutenant/jail commander because the commissioners had not approved the position and because there was no showing of constitutional or statutory authority for the position. The Court held:

> Once the commissioners empower the sheriff to appoint a deputy, however, the county is liable for the deputy's wages. Idaho Const. Art. XVIII, § 6 ("[D]eputies [are] . . . to receive such compensation as may be fixed by the county commissioners.").

*Id.* at 711, 918 P.2d at 580.

For the most part, unlike in *Barth,* the scheme for hiring additional counsel on behalf of the county was followed in this case, thus binding the county to perform pursuant to the contract. A meeting was held between the prosecuting attorney, Newman, and the county commissioners. The meeting led to a letter dated June 5, 1996, in which the commissioners concurred in the prosecutor's desire for thorough prosecution of the high-profile murder cases and acknowledged the need for an additional appropriation. The commissioners unanimously approved a

$15,000 appropriation which was earmarked for the hiring of co-counsel to help prosecute the murder cases. The commissioners requested input into the selection of co-counsel who, according to the express terms of the letter, were "to be obtained on a contract basis." The prosecutor then selected Pena who was to be compensated at the rate of $125 per hour.[4] The oath of deputy prosecutor was administered to Pena before he set to work. Upon termination of his employment, Pena sought payment under his contract for forty-four hours expended in the prosecution of *State v. Hood,* in a manner similar to the billings submitted by the other co-counsel who were also contracted to assist in the murder prosecutions. Only Pena's request for payment was denied by the commissioners.

While we agree with the county that the allocation of $15,000 is not the same as fixing the compensation, it nevertheless set the limit for payment of legal services to be provided in connection with the three murder prosecutions. It remains for the district court on remand to determine from that amount, which was placed at the disposal of Prosecutor Newman, a reasonable rate of compensation to be apportioned to all co-counsel, including Pena, who were engaged to assist in the murder prosecutions.

### B. Compensation for representation of Newman in defense of the prosecutor's office

A significant portion of Pena's claim for payment relates to services provided in defense of the prosecutor's office.[5] Pursuant to an agreement with the prosecutor, Pena rendered legal services in successfully resisting the efforts of the State Attorney General to take over the murder cases from the Minidoka County Prosecutor. The legal battle that began when the prosecutor requested assistance from the Attorney General was resolved when this Court granted a writ of prohibition, vesting Newman with paramount authority and control of the prosecution of

the murder cases. *See Newman v. Lance,* 129 Idaho 98, 922 P.2d 395 (1996).

■ In *Newman,* the Court quoted from the statute, I.C. § 31–2604, which describes the duties of the prosecuting attorney, and from I.C. § 31–2227 which confers upon the prosecuting attorney the primary responsibility for the enforcement of all the penal provisions of the laws of the State of Idaho. Implicit in the Court's opinion is the duly elected prosecutor's right to protect and preserve that superior right to manage the prosecution of criminal cases from infringement by the Attorney General.

■ Article XVIII, § 7 of the state constitution provides that "all actual and necessary expenses incurred by any county officer or deputy in the performance of his official duties, shall be a legal charge against the county." Within the rubric of "actual and necessary expenses," therefore, were the legal services contracted by Newman toward securing her power as prosecutor, for which Pena should be compensated. Where the exercise of authority is mandated by law, a county may not arbitrarily refuse to exercise its authority, or only exercise it pursuant to terms and conditions as the county may dream up. *See O'Connor, et al. v. City of Moscow,* 69 Idaho 37, 44, 202 P.2d 401, 405 (1949)(effect of confining establishments with liquor licenses to a certain locality has effect of revoking previously conferred licenses); *Barth v. DeCoursey,* 69 Idaho 469, 472–73, 207 P.2d 1165 (1949)(denying liquor licenses outside of incorporated cities and villages in the county). Newman's right to defend her office was not conditioned upon any approval or authorization from the county commissioners and is authority conferred in the constitution. Furthermore, it is clear that any request for funds from the commissioners under the circumstances would have been futile in view of the commissioners' wish that the Attorney General assume dominion over the murder prosecutions.

In recognition of the fact that the commissioners control the county funds, Pena

---

4. In her deposition, the prosecutor stated that no written contract with Pena was ever executed.

5. Pena's bill to the county distinguishes time spent in the prohibition action and in defending the suit brought by the commissioners, for a total of seventy-nine hours and thirty minutes.

sought payment of his claim for services in pursuit of the prohibition writ directly from the commissioners rather than by submitting it through the prosecutor's office. Having been charged by the constitution to pay "all actual and necessary expenses" incurred by the prosecutor, the county commissioners are obligated to remit payment to Pena for his representation of the prosecutor in the defense of her office.

We conclude that Pena is entitled to payment for his services as counsel to the prosecutor in regard to the prohibition action, which we deem to be outside of the parties' contract but provided for under Article XVIII, § 7 of the Idaho Constitution. We therefore affirm the summary judgment, in part, holding the county liable to compensate Pena for services rendered on behalf of the prosecuting attorney. Before damages can properly be awarded to Pena, however, a reasonable fee must be determined by the trier of fact for the value of Pena's services. Accordingly, we vacate the district court's award of damages and remand this case to the district court for a determination of the amount due Pena from the county in this regard.

### II.

The county also argues that as contracted co-counsel Pena is not a county employee who is eligible to assert a treble damage claim for unpaid wages under I.C. § 45–617. We agree.

 The nature of Pena's employment as contracted co-counsel was limited in scope and duration to the prosecution of the murder cases, specifically *State v. Hood*. Co-counsel's role in aiding the county prosecutor handle the murder cases can be readily distinguished from the full- or part-time position of a deputy prosecutor, appointed pursuant to I.C. § 31–2602, who is available to work on all matters handled by the prosecutor. As a general rule, co-counsel work with the prosecutor to jointly represent the interests of the government in a criminal prosecution; and, as evidenced by the contracts on behalf of the other two counsel hired to prosecute these murder cases, they serve as independent contractors and are paid a fee for their services, as opposed to wages.

Moreover, if we refer to the commissioners' letter authorizing the prosecuting attorney to hire a deputy, it is clear that the commissioners intended that counsel be hired on a contract basis under the time restrictions and for the express purposes noted above. Had the commissioners been asked to approve the rate of pay to be paid to Pena in his capacity as contracted co-counsel, as is contemplated by the statutory scheme, the commissioners would have had an opportunity to fix an hourly rate of compensation and define Pena's relationship to the county as an independent contractor. We decline to hold that Pena's claim is one for wages withheld from an employee. Accordingly, we reverse the summary judgment holding that Pena is entitled to a judgment on his claim as an employee under the Wage Claim Act and thus vacate the district court's award of treble damages.

### III.

The county asserts that the award of attorney fees made by the district court should be reversed. The county contends that counsel's memorandum of fees and costs does not comply with the procedural rules, I.R.C.P. 54(d)(5) and I.R.C.P. 54(e)(3) and (4) and that, on that basis, the county was entitled to an order disallowing fees and costs. Having reversed the summary judgment in part, we do not address the merits of the county's challenge to the attorney fee award and deem it preferable to vacate the present award of fees but allow reconsideration by the district court upon remand after the district court determines the amount recoverable by Pena for his services as deputy prosecutor and for his services in representing Newman in the prohibition action.

### CONCLUSION

We uphold in part, and reverse in part, the order granting summary judgment to Pena on the issue of the county's liability for payment of Pena's services on behalf of the prosecuting attorney. We vacate the damage award, and the award of attorney fees and costs, and remand the matter to the

district court for further proceedings consistent with this opinion.

 Pena's request for attorney fees on appeal under I.C. § 12–121 is denied in that this Court is not left with the abiding belief that the appeal was brought frivolously, unreasonably and without foundation. *See Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). Costs on appeal to Respondent.

Chief Justice TROUT and Justices SILAK, SCHRODER and JOHNSON, pro tem, concur.